No. 27,898.

THE MARLAND REFINING COMPANY, *Appellee*, v. R. N. CHEATUM
et al., *Appellants*.

(264 Pac. 738.)

SYLLABUS BY THE COURT.

1. AGENCY — *Creation of Relation — Renewal and Extension Agreement Construed*. An agreement between parties is examined and it is held the trial court properly interpreted it as a renewal and extension, with some modifications, of a prior agency agreement between the parties.

2. SPECIFIC PERFORMANCE—*Jurisdiction to Grant Full Relief*. In an action for specific performance a court of equity has power and authority to so frame its judgment and decree as to grant full relief to the parties respecting the subject matter of the litigation.

Appeal from Kingman district court; GEORGE L. HAY, judge. Opinion filed March 10, 1928. Affirmed.

*Charles C. Calkin,* of Kingman, for the appellants.

*S. S. Alexander,* of Kingman, and *W. K. Moore,* of Ponca City, Okla., for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action to compel the specific performance of a contract for the sale of an oil filling station at a price previously determined. The court made findings and rendered judgment for plaintiff. Defendants have appealed.

The Derby Oil Company, on October 31, 1922, leased from Elmer Gillen and wife a part of two vacant lots on a corner on the main street of Kingman for use as a filling station for a term of ten years, with a renewal provision for a like term at an agreed rental of $50 per month, the lessee to pay taxes on improvements which it placed thereon. The lease contained no provision against subletting. On February 23, 1923, the Derby Oil Company sublet this property to the defendants, Cheatum and Cheatum, by a written lease, by the terms of which the Cheatums were to pay the rental of $50 per month and the taxes on the improvements and were to erect a filling station thereon. This lease contained a provision that the Derby Oil Company, or its assigns, should have the right to pur-

Agency, 2 C. J. p. 526 n. 11.  Equity, 21 C. J. p. 134 n. 5.  Specific Performance, 25 R. C. L. 341.

chase the filling station at its cost price at any time there was a termination of an agency agreement, or any renewal or extension thereof, between the Derby Oil Company and the Cheatums. The oil station was constructed on plans and specifications furnished by the Derby Oil Company, and the price was known and determined at the time of its completion. At the time of the making of this sublease there was a written agreement between the Derby Oil Company and the Cheatums by which they became agents of the Derby Oil Company for the sale of Derby Oil Company products. This agreement provided that it might be terminated by either party at any time, with or without cause. About the same time, or a little later, the Derby Oil Company erected, on the right of way of the railroad company, a warehouse, tanks, etc., for a receiving station for oil. This was looked after by the Cheatums. The parties operated under these agreements until about January 1, 1926, when a new agency agreement was made making some changes in the terms of handling products of the Derby Oil Company. In April, 1926, the Derby Oil Company sold its properties at Kingman and its interest therein to the Marland Refining Company, and assigned in writing the lease between it and Gillen and wife, also the lease between it and the Cheatums for the construction of the oil station, and paying of rentals thereon. It also delivered to the Marland Refining Company its agency contract with the Cheatums and checked out and turned over to the Marland Refining Company its properties at Kingman. The Cheatums checked out and accounted to the Derby Oil Company for oil and supplies received up to that date, and checked in with the Marland Refining Company. There was no new written agency agreement between the Marland Refining Company and the Cheatums. The Cheatums, however, continued to receive oil and oil products from the Marland Refining Company, put the name of that company on the filling station, used caps, jumpers, and other paraphernalia furnished by it, and sold the products of the Marland Refining Company, and accounted to that company for such products. In September, 1926, the Marland Refining Company, claiming the rights of the Derby Oil Company under its agency agreement with the Cheatums, exercised its right to terminate the agency agreement, and at the same time notified them that it exercised its option to purchase the filling station at the cost thereof. The Cheatums accepted the termination of the agency agreement, but denied the right of the refining company to

Marland Refining Co. v. Cheatum.

purchase the filling station. Hence, this action to require the Cheatums to sell the filling station to plaintiff.

Appellants first contend that the court erred in rendering judgment for plaintiff in any respect. It is argued that the agreement between the Derby Oil Company and the Cheatums of January 1, 1926, is not an "extension or renewal" of the agency agreement between the same parties of the date of February 23, 1923, and in fact is not an agency agreement at all; that by its terms the Cheatums became purchasers of the Derby Oil Company products and ceased to be agents for that company. This argument lacks merit. The instrument of January 1, 1926, is called an "agency agreement." It contains many provisions identical with those in the agency agreement of February 23, 1923. It specifically recites that the Derby Oil Company employs the Cheatums "to act as its agents" at Kingman, and that they "hereby accept such employment." In almost every clause of the contract they are referred to as agents. It differs from the previous agency contract in only two important particulars. By this the agents were to account to the Derby Oil Company for all oil and gas received at the station rather than for oil and gas sold, and they were to receive a commission of 2½ cents per gallon instead of 2¼ cents. There are minor changes to conform to these principal changes. It does provide that "it cancels and supersedes" all previous agency agreements between the parties. Appellants argue that these words are not tantamount to the words "any extensions or renewals," as used in the sublease agreement. Definitions of these words from various sources are given in the briefs. This is largely a play upon words. It is not necessary to analyze these definitions. It is sufficient to say that definitions may be found which accord with the view of the plaintiff. But what is more important is that it is clear, not only from the agency agreement of January 1, 1926, but from the conduct of the parties under it, that it is a renewal and extension with some modifications of the prior agency agreement. In this connection appellants argue that even if the agreement of January 1, 1926, can be said to be a renewal and extension of the previous agency agreement, that it was in fact terminated when the Marland Refining Company took over the Derby Oil Company's business, for at that time the Cheatums rendered an account and settlement with the Derby oil Company and checked back to that company products and equipment on hand. Really all this amounted to was such checking as was necessary on

the change of ownership between the Derby Oil Company and the Marland Refining Company. The products and equipment checked out by them to the Derby Oil Company were checked back to them by the refining company and received by them. It was not a termination of the agency agreement, but the agreement continued with the Marland Refining Company in lieu of the Derby Oil Company, without any other change than a checking for a proper basis of accounting.

Appellants next contend that if for any reason plaintiff was entitled to purchase and own the filling station, that was the extent of its right of recovery herein, and that the judgment of the court was erroneous in that it decreed that on the payment by plaintiff of the agreed price of the filling station, defendants should convey the same to plaintiff by a proper instrument of conveyance, or, in lieu thereof, that the decree of the court should so operate, and that the plaintiff should have possession of the premises; and further, that if defendants did not yield possession, that plaintiff should have a writ of assistance to put it in possession. In this connection appellants argue that they had a lease with the Derby Oil Company which had been assigned to plaintiff; that the lease nowhere provided that in the event the Derby Oil Company, or its assignee, should elect to purchase the filling station that it should have possession of the property, and that there was no agreement between the parties for such possession.

We think the court properly interpreted the sublease between the Derby Oil Company and appellants to mean that if the Derby Oil Company, or its assignee, purchased the filling station it was entitled to possession thereof, and to the termination of the sublease. But appellants argue that if this lease is to be regarded as terminated, the proper way for plaintiff to get possession of the leased premises is by an action in forcible detainer, with proper prior notices. This contention is untenable. There is no merit in the suggestion that after this case was tried out the plaintiff should be compelled to start over with an action for forcible detainer. The court had jurisdiction of the parties and the subject matter, and it is the function of a court of equity to make such proper orders, judgments and decrees as may be necessary to grant full relief to which the parties are entitled.

The judgment of the court below is affirmed.

HUTCHISON, J., not sitting.