JOHN DOORLEY et al. v. THE FARMERS AND MECHAN-
ICS LUMBER COMPANY.

No. 90.

1. BOND — Conditional Agreement — Surety Bound.   Where a surety signs a bond and leaves it in the hands of the principal, to be delivered only upon the performance of certain conditions, and the principal delivers the bond to the obligee without such condition being complied with, and the obligee takes it without notice of the conditional agreement, the surety will be bound.

2. CONTRACT—Estoppel—Practice.   Courts of justice, if in their power to do so, should not allow a party who, by act or admission, has induced another with whom he is contracting to pursue a line of conduct injurious to his interests to deny the act or retract the admission in case of apprehended loss.

MEMORANDUM. — Error   from   Wyandotte   district court;  H. L. ALDEN, judge. • Action by The Farmers and Mechanics Lumber Company against John Door-ley and others on a bond.   Judgment for plaintiff. Defendants John Doorley and George Gruble bring

the case to this court.    Affirmed.    The opinion here-
in, filed September 9, 1896, states the material facts.

   *Nathan Cree*, for plaintiffs in error.
   *Moore & Berger*, for defendant in error.

'The opinion of the court was delivered by

   GILKESON, P. J.: In 1889 Andrew N. Pettit was
the owner of certain real estate in the city of Wyan-
dotte, and entered into a contract with the Farmers
and Mechanics Lumber Company for lumber and
other building material to be used in the erection of
two buildings thereon.  To prevent the filing of me-
chanics' liens, he made, executed, and filed, on the 3d
day of July, 1889, with the clerk of the district court
of Wyandotte county, his bond, as provided by para-
graph 4745, General Statutes of 1889, in the sum of
$3,000.    The Farmers and Mechanics Lumber Com-
pany performed its part of the contract, but Pettit.
failed to pay for the material so furnished, amounting
to the sum of $400, and to recover this amount it
brought an action upon the bond, making Pettit, Door-
ley and Gruble (as principal and sureties thereon)·
parties defendant.

   Andrew N. Pettit made no appearance.    Defendant
James Doorley filed an answer of general denial, and
further alleging, in substance, that on or about the
24th day of June, 1889, he signed said bond as surety,
with the said Andrew N. Pettit as principal and one
R. H. Corwin as a cosurety thereon, and, with said
Corwin and the defendant Pettit, went to the clerk of
the said district court and presented said bond so
signed for approval and acceptance ; that said clerk
refused to approve the same, or to approve either said
defendant or the said Corwin as sureties thereon, and

then and there, without the knowledge and consent of said defendant, erased the name of said Corwin from the body of the said bond, and the signature of said Corwin therefrom, and then returned said bond to said Corwin; that thereupon said defendant understood and believed that all proceedings to execute the same as his bond were ended and terminated; that afterward one Cox came into possession of said bond, and, without the knowledge or consent of said defendant, procured the signature of the said George Gruble thereon, and presented the same to the clerk of said court, who then approved the same, but without having said defendant Doorley justify as surety or approving said Doorley as surety thereon; that all use of said bond, after the same was rejected by said clerk when presented with said defendant and said Corwin thereon, was unauthorized by said defendant and without his knowledge and consent; wherefore said defendant claimed to be released as surety thereon.

The defendant George Gruble answered said petition substantially as in the answer of said defendant Doorley, as above set out; and further stated and alleged, in substance, that when he, Gruble, signed said bond, he justified as a surety thereon and delivered it to one J. F. Cox, with directions to secure the justification of said defendant Doorley as surety thereon; that he at that time, having no knowledge of the prior rejection of said bond or the refusal of the clerk of said court to approve said Doorley as surety thereon, supposed that said bond was not to be approved without two approved sureties thereto; that afterward said Cox, without complying with his said directions, presented said bond to said clerk with said defendant Gruble's name thereon, who thereupon approved the same and filed it in his office; that he never author-

ized the delivery of said bond to said clerk by said
Cox in violation of the instructions of said defendant,
without the justification and approval of said Doorley
as a surety thereon ; wherefore said defendant claimed
to be released from liability as said surety.   The jury
found as follows :

"Ques. Did Towner ever approve and accept Door-
ley as a surety or did he reject him? Ans. Yes, he
approved him.

" Q. After the rejection of Doorley as a surety, did
he think and understand that the proceedings to de-
liver the bond as his bond were ended?   A. No.

" Q. After that time, did he ever intend that it
should be delivered as his bond?   A. Yes.

" Q. After that time, did he ever give any one any
authority to use the bond as his and deliver it?   A. Yes.

" Q. Did Gruble ever agree or expect to be alone
bound?   A. No.

" Q. Was Doorley insolvent when the bond was
filed?   A. We do not know.

" Q. At the time Gruble signed the bond and when
it was delivered did he know of the rejection of Door-
ley as a surety?   A. No.

" Q. When Towner accepted and approved the bond,
did he have any authority from Doorley to do so?   A.
Yes.

" Q. When Gruble signed the bond did he know
Doorley or have knowledge of his insolvency? A. No.

" Q. Did Doorley, after the rejection of the bond,
leave the bond with Corwin, intending it to be used to
get further sureties and then delivered as his bond?
A. Yes.

" Q. Was the bond left in the possession of Pettit
after its rejection by Towner?   A. Yes, with agent."

The defendants claim that for the reason set forth
in their answers they should be released.   This con-
tention cannot be maintained.   The findings of the
jury do not support their contention, and these find-
ings are supported by a great preponderance of the

testimony, and we do not think the law sanctions their release.

The object of the bond sued upon in this action is twofold : (1) The protection of those who contribute labor and material to the building or improvement contracted for ; and (2) the benefit of the owner or contractor.   When it is given no lien *can attach*, and if any has so attached prior to its being given *it is discharged*.   It takes the place of the lien.   Should a bond given for such purpose be lightly set aside for any act or omission of the principal, or upon some secret, unperformed understanding between the sureties?   We think not.   (*Risse v. Planing Mill Co.*, 55 Kan. 518 ; *Carter v. Moulton*, 51 id. 9.)

It is well established in this and in other jurisdictions, that where a surety signs a bond and leaves it in the hands of the principal, to be delivered only upon the condition that it is to be signed by another person, and the principal delivers the bond to the obligee without complying with the condition, and the obligee takes it without notice of the conditional agreement, the surety will be bound.   (*Doir v. United States*, 16 Wall. 1 ; *Shah v. Peck*, 51 Me. 284 ; *Taylor v. King*, 73 Iowa, 153 ; *The State v. Pepper*, 31 Ind. 76.)   In such case it is the surety who puts the trust and confidence in the principal, and not the obligee ; and if any one is to be the loser, it should be the surety, for he puts it in the power of the principal to do the mischief complained of.   The bond having been accepted and acted upon, the sureties are estopped from setting up a nonperformance and undisclosed condition.

The ancient rules of the common law in relation to estoppels *in pais* have been relaxed, and the tendency of modern decisions is to take broader views of the purposes to be accomplished by them, and they now

7—4 KAN. APP.

apply so as to reach the case of a party whose conduct is purposely fraudulent or will effect an unjust result. It must be conceded that courts of justice, if in their power to do so, should not allow a party who, by act or admission, has induced another with whom he was contracting to pursue a line of conduct injurious to his interests to deny the act or retract the admission in cases of apprehended loss. Sound policy requires that the person who proceeds on the faith of an act or admission of this character should be protected by estopping the party who has brought about this state of things from alleging anything in opposition to the natural consequences of his own course of action. And we think it is well established doctrine, that "whenever an act is done or statement made by a party which cannot be contradicted without fraud on his part or injury to others whose conduct has been influenced by the act or admission, the character of an estoppel will attach to what otherwise would be mere matter of evidence."

The trial judge has very ably and fully presented the law governing this case in his instructions, and the jury have found fully upon the facts in the case. It is clear upon these facts, both upon principle and authority, that the bond is a valid obligation upon those who executed it, upon the principle, and for the reason that the sureties knew the purpose of making the bond was for the protection of the material-men and laborers from loss by the acts of the principal. They left the bond in the principal's hands for delivery for that purpose; true, "upon condition." But the obligees knew nothing of the condition. They relied upon the bond and furnished material upon the strength thereof. The sureties, by executing the bond and leaving it with the principal, placed it in

his power to deliver it as a valid, complete instrument. He did so deliver it. It is a case for the application of the maxim : "When one of two innocent parties must sustain a loss from the wrongful act of a third, the loss must be borne by the one who has enabled the wrong-doer to commit the act."

The judgment of the court below will be affirmed.

All the Judges concurring.