Hinderliter v. Bell.

---

No. 24,791.

MRS. ANNA HINDERLITER, *Appellant,* v. (JOHN HINDERLITER), NORA E. BELL AND FRANK BELL, *Appellees.*

SYLLABUS BY THE COURT.

1. ACTION TO SET ASIDE DEED—*Ground of Fraud—Statute of Limitations.* In an action to set aside a deed for fraud where it appeared that the plaintiff signed a contract reciting that a deed had been executed by her on the same day conveying the land to the defendants, which contained a full statement of terms and conditions of the sale and of the consideration paid, a copy of which was delivered to her, and where following the execution of the contract and deed the latter was duly recorded, it is held that she had notice of the existence and contents of the contract and deed and of the fraud alleged sufficient to set the statute of limitations in motion.

2. SAME—*No Confidential or Fiduciary Relations Existed—Instruments on Record Imparted Notice of Contents.* It is further held that although she was a stepmother of the defendants, who had reached majority and had gone into homes of their own before the contract and deed were executed, no confidential or fiduciary relations existed which would excuse the failure to discover the alleged fraud, and that there was no fraud or attempt to prevent her from availing herself of the notice which the instruments and the record imparted.

Appeal from Franklin district court; HUGH MEANS, judge. Opinion filed December 8, 1923. Affirmed.

*Wilbur S. Jenks,* of Ottawa, and *M. H. Kennedy,* of Denver, Colo., for the appellant.

*F. M. Harris,* and *Walter Pleasant,* both of Ottawa, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: Mrs. Anna Hinderliter brought this action against the sons and daughter of her deceased husband to cancel and set aside a contract and deed executed by her, but only the daughter, Mrs. Nora E. Bell, and her husband, were served with process. From a decision of the court holding that her petition failed to state a cause of action she appeals.

The averments of her petition, so far as material to the questions raised on this appeal, are in substance that plaintiff was the widow of Daniel W. Hinderliter, who died intestate, leaving a farm in Kansas of the value of $25,000, encumbered by a mortgage of $1,300, and also some personal property. By a former marriage her husband had a family of five children, and when she married him, the ages of the children ranged from ten to twenty-five years, and she alleged that she had cared for them from the date of the marriage until his death, a period of about twelve years. She alleged that her husband died intestate in Wyoming, on January 20, 1917, and that after his death the body was taken to Franklin county, Kansas, where he had formerly lived. She averred that after the burial, which was on January 25, 1917, the children by misrepresentation, undue influence and fraud, induced her to execute a contract and deed transferring the land in Kansas to them. The agreement recites that plaintiff had sold and conveyed by her deed of conveyance to the children all of her interest, right and title to the real estate in Kansas described, and all her interest in personal and other property that the deceased father had. In consideration of the conveyance they agreed to pay to plaintiff, the sum of $20 per month, payable monthly so long as she might live, and in addition to such payment they agreed to furnish her in time of sickness, proper, necessary and suitable medical attendance, a competent nurse, if necessary, and at last to see that she had a proper, suitable and respectable burial. It recited that should she remarry the contract would end and the grantees would be under no further obligation to her. At the time of the execution of the contract, which was

Hinderliter v. Bell.

January 29, 1917, she executed a deed conveying to the children an undivided one-half of the land described in the contract. The contract was signed and acknowledged by the plaintiff before a notary public, and both contract and deed were recorded on May 3, 1917. She alleges that at the time of her husband's death she was without funds, advanced in years, sick and inexperienced in business and ignorant of the value of her husband's estate, and also of the character of the contract and deed executed by her. She alleges that after the funeral the children began a systematic effort by undue influence, misrepresentation, fraud and deceit to overreach and defraud the plaintiff, telling her that if she would transfer her interest in the property to them, they would provide for her as already stated. And in addition to the provisions of the contract she charged they told her that they would build a two-room addition on the house for her and indicated where this should be built, and further that if she wanted to live in town or anywhere else, they would at their expense provide quarters for her there, and further that the contract and deed would be so worded that her interest in the real estate would be security for the performance of the agreements they had made. It was alleged too, they told her that by reason of the mortgage against the property she was in danger of losing her interest in the property by a foreclosure proceeding, and also that if she should receive the money for her interest she would run the risk of losing it through bad investments. She stated that she requested them to delay the settlement for a time, but they were impatient and insisted that they should go ahead with the transaction and close up the matters so that they might return to Wyoming where they lived. She states that being without money and sick and believing in the honesty of the defendants they would fulfill their promises and that there was a danger of losing her property, and being without proper advice as to her rights, she accepted their offers believing their representations that the contract mentioned contained all the agreements made between them, and did not know to the contrary until her attorney, in September, 1921, informed her of the effect of the papers which she signed. She further states that a copy of the agreement was sent to her after the execution of the deed and she was not aware of the fact that she had signed a deed or any paper other than the agreement until she was advised by her attorney just before the action was brought. She recited that after the signing of the papers she made her home with the Bells on the land in question

and lived there nearly four years, until September, 1921, when she first learned of the nature of the agreement and deed that she had executed. She alleges that she received the $20 a month from February 1, 1917, to October, 1921, but did not like the provision that was made for her in the Bell home, and although she asked them for better quarters as they had promised, none were furnished, and that in November, 1920, at their request, she left their home.

She further alleged that the agreement made did not contain all of the promises they had made to her in that it did not provide the land would stand as security for the performance of the conditions, and further that she did not understand the difference between a deed and any other legal document until she was informed by her attorney shortly before the suit was brought. It is alleged that the contract did not contain the agreement to build an addition to the home for her, all of which she believed to have been embodied in the agreement which she signed. It is further stated that her husband had money and other property which was taken over by the defendants without an inventory and that no accounting had been made of it either before or since the execution of the agreement and deed. There is an allegation that shortly after she signed these instruments, Nora E. Bell, the daughter, and her husband purchased the interests of the other defendants and paid therefor the sum of $9,880, and in the transaction they assumed the payment of the $1,300 mortgage existing on the land. She recites that the lands were valuable for the production of oil and wheat, and that the Bells have received annually from the lands a net profit of about $3,000. She stated that all the promises were false and fraudulently made without the intention to fulfill them, but rather for the purpose of lulling her into a feeling of security and obtaining the property without giving her just compensation therefor. She alleges that she discovered the fraud about the 21st day of September, 1921, whereupon she immediately elected to rescind the contract and notified the defendants of her decision, offering to pay back the amount she had received, namely, about $1,000, and asking that the contract and deed be canceled and that an accounting be made by the defendants of all moneys and property which they had derived from the land and converted to their own use.

The pleading states facts which if established by evidence would apparently entitle plaintiff to relief if the remedy is not barred by the statute of limitations. Her cause of action is based on the

ground of the fraud of the defendants and is one which must be brought within two years after it accrues. It is not deemed to have accrued until the discovery of the fraud, and the question is whether under the allegations of the pleading it was discovered more than two years before the action was brought. To avoid the bar of the statute plaintiff avers that she did not learn of the fraud until more than four and one-half years after the execution of the conveyance. While she says she did not know of the execution of the deed or that it operated as a conveyance of her interest in the land, the petition shows that it was duly recorded on May 3, 1917. Although the recording of the deed may not give constructive notice of every fraud practised in procuring its execution, it does impart notice of its existence and contents. (*Black v. Black,* 64 Kan. 689, 68 Pac. 662; *Lewis v. Duncan,* 66 Kan. 306, 71 Pac. 577; *Rogers v. Richards,* 67 Kan. 706, 74 Pac. 255; *Duphorne v. Moore,* 82 Kan. 159, 107 Pac. 791; *Walline v. Olson,* 84 Kan. 37, 113 Pac. 426; *Davis v. Heynes,* 105 Kan. 75, 181 Pac. 566; *Foy v. Greenwade,* 111 Kan. 111, 206 Pac. 332.) It has been held that a deed regular on its face did not impart notice of certain matters outside of the deed, such as notice to creditors that the deed was made for the purpose of hindering, delaying or defrauding them or other creditors in the collection of their claims. (*Underwood v. Fosha,* 96 Kan. 549, 152 Pac. 638.) However, the plaintiff had more than the knowledge imparted by the public records. In executing and acknowledging the execution of the instrument she had an opportunity to learn the character of the instrument and that it operated as a transfer of her interest in the land. In the petition it is stated that a copy of the contract was sent to her after the execution thereof. This she had in her possession for more than four years, and in it was the plain statement that she had on that day conveyed all her interest, right and title to the land, describing it. It also contained a full statement of the consideration for the conveyance, reciting the monthly allowances the grantees were to pay to her, the furnishing to her in sickness of medical attendance with the care of a competent nurse. This agreement not only gave her notice of the execution of the deed and the transfer, but also of the conditions that the grantees were to perform in consideration of the transfer. It furnished her knowledge of the fact, too, that the conditions to be written into the contract, namely, that the land should stand as security for performance and that an addition to the house for her use was to be erected, and also

that provision was to be made for her if she chose to move to town, were not included in it.

Assuming that she was defrauded in the transaction she had the means of information and must be held to have had knowledge of the conveyance she had made and of the conditions embraced or omitted from the contract. This knowledge she gained or could have gained from the contract, and the slightest diligence would have revealed the things and wrongs of which she complains. One who has an instrument in her possession stating the terms and conditions of the transfer cannot shut her eyes and say that she was unaware of provisions distinctly written therein. Concealment of the transfer after it was made is not charged nor was there any attempt to throw her off her guard or divert her attention from the contents of the papers she signed nor is it averred that there was any fraud by the defendants to prevent her from ascertaining or availing herself of the contents of the papers or the record of the transfer. It must be held that she had notice of the fraud and that the cause of action accrued more than two years before her action was brought. Although claimed there was no fiduciary or confidential relation between the parties that affects the starting of the statute of limitations. She was the stepmother of the defendants. When she married their father, the eldest stepchild was twenty-five years old, and the youngest ten. All of them had reached majority and had gone from the father's home before the transaction in question. There was nothing approaching agency for the plaintiff nor the intrusting of business to them and no circumstances such as would create a trust relationship. From the time she learned the contents and character of the contract she had notice and knowledge of the attitude of the defendants and of the wrongs alleged sufficient to start the statute of limitations.

The judgment of the district court is affirmed.