No. 27,593.
No. 27,594.

MARY MURPHY et al., *Appellees,* v. JOSEPH PUSCH et al., *Appellants.*

(259 Pac. 684.)

SYLLABUS BY THE COURT.

1. DEEDS—*Fraud and Undue Influence—Sufficiency of Evidence.* In an action to set aside deeds obtained from an aged father by the undue influence and fraud of a son and daughter, the record examined and the evidence for plaintiffs held sufficient to support the cause of action against defendants' demurrer thereto and sufficient to support the judgment.

2. LIMITATIONS OF ACTIONS—*Fraud—Evidence of Knowledge.* The evidence to which the trial court gave credence did not show that the grantor of the deeds had two years' notice or knowledge of the fraud practiced upon him prior to the commencement of the action, and therefore the action was not barred by the statute of limitations. ·

3. TRIAL—*Misconduct of Trial Judge.* Certain alleged irregularities of trial practice examined and not sustained.

Appeal from Wabaunsee district court; ROBERT C. HEIZER, judge. Opinion filed October 8, 1927. Affirmed.

*A. E. Carroll,* of Alma, for the appellants.

*A. E. Crane, B. F. Messick, A. Harry Crane, J. M. Stark,* all of Topeka, and *William Bowes,* of Alma, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to set aside three deeds to certain Wabaunsee county lands which defendants had procured from their aged father. The action was based on allegations of fraud and undue influence and was originally begun by the father himself. On his death the litigation was carried on by his executrix, and also by three brothers and a sister of the defendants.

The outstanding facts were these: John Pusch and his wife came from Germany many years ago, settled in Wabaunsee county, and reared a large family. He acquired 200 acres of land and the usual

Appeal and Error, 4 C. J. p. 732 n. 85. Cancellation of Instruments, 9 C. J. p. 1256 n. 14. Deeds, 18 C. J. pp. 445 n. 34, 447 n. 46; 8 R. C. L. 1030, 1034. Limitation of Actions, 37 C. J. p. 929 n. 1.

chattels of a Kansas farmer. His wife also acquired some land in her own right. John never learned to speak, read, or write the English language with understanding or facility. His wife was his spokesman in business transactions until her death in 1910. Ere then the children had grown to maturity, and all had established homes of their own except Emma and Joseph. The latter two continued to reside with their father in the family homestead, as did also the wife and children of Joseph.

In 1915, three deeds apparently executed by John Pusch conveying the 200 acres in three separate tracts to Emma and Joseph were placed on record. At that time, John Pusch was eighty years old, and long prior thereto his activities as a farmer and otherwise had ceased. He was accustomed to stay about the house and rarely went to town. In 1922 Emma died, bequeathing all her interest in these lands to Joseph. Early in 1924, John Pusch left his farm home and took up his abode with his daughter, Mrs. Mary Murphy, and shortly thereafter this action was begun. The petition charged fraud and undue influence on the part of the grantees in obtaining the deeds to the father's lands. The father's deposition was taken in May, 1924, and he died the following July ere the action was brought to trial.

There were two actions in the court below—one to set aside a deed from John Pusch to Joseph Pusch to 40 acres, to set aside a similar deed to Joseph and Emma for 120 acres, and to set aside a deed to another 40 acres; the other action was to set aside the will of Emma Pusch. Involved therewith were separate causes of action for rents and profits of no present concern. The action to set aside the will of Emma was abandoned and a decision therein was entered in favor of defendants. The trial court found that the deeds were procured by the fraud and undue influence of Joseph and Emma, and judgment setting them aside as entered in favor of plaintiffs.

Defendant Joseph Pusch appeals, urging certain errors, the first of which relates to the overruling of his demurrer to plaintiffs' evidence. That evidence tended to show that John Pusch did not know he was making deeds to his lands but supposed he was signing certain papers which had to do with making him a citizen of the United States, and some papers which he thought had to be sent to Germany. An effort was made to show that a consideration in money and mortgages passed from the grantees to the father, but in

view of the fact that the aged father had no money and no property
of any sort on a certain March day, 1924, when at 89 years of age
he was invited by Joseph to get out or go to the poorhouse, it is not
surprising that the trial court gave no credence to defendants' at-
tempt to show a consideration for the conveyances.  · All the cir-
cumstances, the situation of the parties, the father's dependence and
reliance on Joseph and Emma, his want of understanding of English,
and the fact that between the death of their mother in 1910 and
March, 1924, the father's lands had passed into their hands, and all
his chattels had been disposed of and the proceeds had vanished, and
the estates of Emma and Joseph had correspondingly increased—
these and other probative incidents made too strong a case to be
·disposed of by defendant's demurrer to the evidence and quite
justified the judgment entered in plaintiff's behalf.

Defendants contend that the action was barred by the two-years'
limitation of the statute of frauds.   (R. S. 60-306.)   They argue
that the evidence conclusively shows that John Pusch knew he had
deeded his lands to the grantees shortly after the purported execu-
tion of them, August 20, 1915, which was some nine years before this
action was begun.   This court is not at liberty to attach such a
convincing quality to the evidence relied on by defendants.   The
father was 80 years old when the deeds were made; he could not
read English; he did not and could not read the newspapers which
contained the brief news items touching the purported conveyances;
the official records meant nothing to him; and the trial court was
not bound to believe the testimony of any particular witness adduced
in defendants' behalf, not even that of the scrivener or the notary
who took the father's acknowledgment.   The notary's testimony
`did not go far towards proving that the father understood what he
was about.   In part, it reads:

"A. After he signed the deeds, I asked him  .  .  .  if he acknowledged
the execution of them.                           .                 .

"Q. You don't know whether he understood you or not?   A. No ,sir, I   .
suppose he did; he nodded his head."

It is elementary both by express statute and in principle that the
time given in which to commence an action for relief on the ground
of fraud does not begin to run until the fraud is or reasonably could
be discovered, and the record contains nothing which would con-
strain this court to declare that the father did discover or reasonably
could have discovered that he had parted with the title to every

acre of land he possessed at any time prior to that March day in 1924 when his son Joseph so informed him in an angry altercation. A brother's testimony, in part, reads:

"Joe says, 'If you don't be careful, I will put you in the poor farm.' Father says, 'You can't do that; this property belongs to me.' Joe says, 'You haven't got a darn thing,' 'It all belongs to me, number one.' Father cried, He says, 'If this is the case, I am going to Mary or some place where I can find out; you haul me down.' Joe says, 'The roads are wide, walk it.'"

Since the trial court was not bound to believe the evidence adduced by defendants which tended to show notice and knowledge on the part of the father several years before the action was begun, and plaintiffs' evidence, to which the court did give credence, was quite to the contrary, the action was not barred by the statute of limitations.

An alleged irregularity of practice is intimated. Defendants' counsel assert that they had no notice of a hearing of their motion for a new trial on January 8, 1927, which was the last day of the official term of the trial judge, and that they were deprived of an opportunity to present certain newly discovered evidence. But there was no hearing of any motion for a new trial on that date. That hearing had taken place some months before. All that happened on January 8, 1927, was the announcement of the trial court's decision on defendants' motion for a new trial which the court had held under advisement for some months, following its presentation on written briefs of the parties during the summer of 1926.

An ill-advised error assigned by defendants is that the trial court overruled their motion for a new trial outside his judicial district. The record does not support this point; it is abandoned in defendants' brief; but in lieu thereof it is next insinuated that when the trial judge went to Osage county for the purpose of overruling defendants' motion he went in company with the attorney for plaintiffs, thereby committing some supposed breach of judicial propriety. So far as the record shows, this, too, is a groundless aspersion against which the long and honorable career of the venerable trial judge should have securely protected him.

Neither error of law nor miscarriage of justice appears in this record, and the judgment is affirmed.