No. 28,000.

George E. Converse et al., *Appellees,* v. E. L. Watts et al.,
*Appellants.*

(275 Pac. 181.)

Opinion filed March 9, 1929.

*John W. Davis, Russell L. Hazzard,* both of Greensburg, *H. Llewelyn Jones,* of Meade, and *Manvel H. Davis,* of Kansas City, Mo., for the appellants.

*W. D. Jochems* and *J. Wirth Sargent,* both of Wichita, for the appellees.

The opinion of the court was delivered by

Hutchison, J.: This is an appeal by the defendant from a judgment of $13,875 rendered against him on a verdict in favor of the plaintiffs in the district court of Meade county for damages oc-

casioned by the fraud of the defendant in the alteration of two mortgages given by the plaintiffs on Kiowa county lands, whereby they lost their Kiowa county lands and the crop of wheat thereon for the year of 1925 when they were evicted therefrom. The appellant makes twelve assignments of error, and under the same number of legal headings discusses each of these several general topics, with numerous subdivisions and particular facts and instances.

The first error considered in the brief of appellant is in overruling the motion for new trial because the verdict was in whole or in part contrary to the evidence. The plaintiffs are husband and wife, and were living on their 120-acre farm in Kiowa county in the summer of 1918, and owning another tract a mile north containing 160 acres, with a mortgage on both of them for $4,200. The defendant lived in Meade county and sold these plaintiffs a half section of land there near the town of Fowler for $17,000. They entered into an agreement whereby $10,000 of this purchase price was to be given to defendant in the form of a mortgage on the farm purchased and $7,000 in the form of a second mortgage on the 120-acre farm in Kiowa county, as the plaintiffs maintain, while the defendant maintains it was to be on both tracts in Kiowa county. Two different written contracts have been introduced in evidence in support of these two theories, one of them describing only one tract and the other describing both. Both are apparently executed by both plaintiffs and the defendant. The parties disown the signature to the respective contracts against their contentions. The defendant was designated to prepare the contract and the mortgages. He says he did prepare them just as they are, except the contract which describes the 120-acre farm as the only one in Kiowa county to be included in the $7,000 mortgage. Plaintiffs say when they signed the $7,000 mortgage, about ten days after signing the contract, it did not contain the description of the 160-acre farm but only the 120-acre one.

On July 25, 1921, the plaintiffs were indebted to the defendant in the sum of $421.74, and agreed to give him a mortgage on the 160-acre farm to secure that amount, and did sign such a mortgage, and it now appears that both tracts are included in both of these mortgages. The plaintiffs allege and maintain that the additional tract was inserted after the mortgages were executed by them, and this alleged fraud by way of forgery in both of these mortgages is the basis of their claim for damages.

The evidence shows that thirteen months after the execution of the $7,000 mortgage defendant negotiated for the purchase of both farms in Kiowa county, agreeing to pay $60 per acre for the 160-acre tract and $80 per acre for the home place of 120 acres, which would pay off all plaintiff's indebtedness and leave them the Meade county farm clear, they having in the meantime reduced the $4,200 first mortgage. This arrangement was kept alive by frequent conferences on the subject, as shown by the evidence, and defendant postponing the closing of the transaction by relieving plaintiffs of the payment of interest on all mortgages until he shaped his affairs so as to close the deal. In the meantime defendant had assigned all three of these mortgages to his brother, T. R. Watts, a nonresident of Kansas, who instituted foreclosure proceedings on the two Kiowa county mortgages in February, 1923, they having been promptly recorded after execution. Plaintiffs employed an attorney to defend, who filed a motion, which was overruled, and made no further defense because he could not hear from plaintiff (that is, the husband, to whom he had written), and the evidence now shows he had been very ill and unconscious for quite a while about that time. Plaintiffs and their attorney say they did not confer about the description of the land, and plaintiffs did not know of the alteration of the mortgages when they talked with their attorney, and had no reason to suspect it or inquire about it, because defendant had agreed to purchase both farms in Kiowa county, and they believed him and relied upon his promise.

Appellant dwells at length upon the right and duty of this court in reviewing these proceedings to examine for itself the signatures to the various instruments, some admitted to be genuine and others disowned, the typewriting of the several instruments, including the description of the land therein and the arrangement thereof in the contracts and mortgages, the originals as well as photostatic copies, all of which have been filed in this court with the abstracts and briefs. All the authorities cited have been carefully reviewed, and we fail to gather from them an approval of the proposed course of this court passing upon the genuine character of signatures by comparison or as experts to detect the difference in signatures and the typewriters used for different instruments, where the instruments thus submitted for inspection were not all the evidence on the subject submitted to the jury. The abstract and briefs give pages of

oral testimony introduced on this subject for the consideration of the court and jury. One of the cases cited was where in a contested election the case was tried to the court without a jury and the evidence was limited to the ballots themselves and documentary evidence, which is very different from this case. Citations are not needed to show that such matters supported by oral evidence and expert witnesses are questions for the jury and not the reviewing court, except to determine if there was sufficient evidence on this subject to submit the matter to the jury and later enough to sustain the verdict. To that extent we approve the action of the trial court.

The next error treated in the appellant's brief is overruling the demurrer to plaintiffs' evidence. Three special grounds under this heading are urged: First, that the evidence does not show that the injury was the proximate result of the fraud alleged; second, that the promises made by the defendant were not actionable fraud and were too remote; and, third, that before plaintiffs could recover they must show that they acted as reasonably prudent persons would have acted under the circumstances. Appellant cites *Bailey v. Oatis,* 85 Kan. 339, 116 Pac. 830, and decisions from other states to show that the injury complained of must be the proximate and natural result of the fraud alleged. In other words, if it had not been for the alleged forgery by inserting the description of the 160-acre farm in the $7,000 mortgage the plaintiffs would not have lost their Kiowa county farms. They might have lost the home place properly covered by the mortgage and might have had a personal judgment rendered against them for the deficiency, if any, but with 160 acres practically clear a businesslike arrangement with it as security could easily have prevented any loss. The facts in this case are as different from those in the Bailey case above cited as day and night. There Oatis lost nothing by the misrepresentations. He owed $1,500 and interest for several years. Through false statements he rented the farm, paid rent, and later purchased it for $1,500 on statements that were false, as the jury found. The court reversed the case because there was no loss sustained, and of course none that could be traced to the false statements. Here the plaintiffs have lost their two Kiowa county farms, admitted by the offer of defendant to be worth $19,200. They have also lost the Meade county farm. The defendant, on the other hand, in his own right or in the name of his brother, to whom he assigned the mortgages, has

all three farms. There appears to be not only a direct loss here but a remarkable gain by the defendant without the investment of a dollar—just by making the mortgage cover and encumber all the property owned by the plaintiff.

In the case of *Stinson v. Aultman,* 54 Kan. 537, 38 Pac. 788, the fraud invoked to stop the bar of the statute of limitations was that of a third party whose misconduct and fraud in no way lessened the original rights of the parties. They remained the same. Here the alleged fraud is not by any third party, and the loss is clearly shown to be the difference between the offered price and the encumbrance, or the loss of the 160 less the $421.74 mortgage intended to be put on it alone.

The second point urged under this heading is that the promises made by the defendant are not actionable and are too remote. They are closely connected with the original fraud, and are what is frequently referred to as a part of a continuing fraud by means of deceit. The record shows that upon the first meeting of these people with the defendant, as a part of their plan in making the purchase of the Meade county land, they told defendant they intended to sell their Kiowa county land so as to pay out on the proposed purchase. That was before any contract or mortgage had been written, and the evidence, not here recited, shows that defendant came to see plaintiffs the next day after he heard they were going to sell, and promised to purchase it himself, and urged and insisted that they not sell or offer it to any other person. This promise to purchase later, shown by his conduct to have been made without any intention of fulfilling it, is but a part of the claim of deceit and false and fraudulent promises to lull the plaintiffs into complacency and to keep them from investigating records, and very apparently to keep the knowledge of the false record from becoming known, as it would if a sale to others were made. The evidence shows that the defendant frequently urged plaintiffs not to sell to others, and renewed his promise to buy, and by way of inducement for matters to stand as they were, told them there would be no interest on any of the mortgages while they waited for him to close the deal and take over the Kiowa county land. In the meantime the brother was commencing foreclosure of the mortgages, and the dwelling house on the Meade county farm burned, and defendant made a new proposition to the sick plaintiff and his wife during the term of court in Kiowa county when the foreclosure case was tried

that if the plaintiffs would give him the $2,500 insurance on the house that was burned and give back to him the Meade county land he would release the two mortgages on the Kiowa county farms and plaintiffs would then have them free of encumbrance except the balance of $2,100, to which the plaintiffs had in the meantime reduced the first mortgage. To this they agreed, and he promised to dismiss the foreclosure suit, and urged them not to telephone Judge Day that plaintiff was sick and unable to attend court, for he would take care of that by having the case dismissed.

Another item in the chain should be mentioned. Plaintiffs received about $2,000 from the insurance company for the loss of their furniture and clothing when the Meade county house was burned. Defendant urged the wife of the sick plaintiff to use $1,500 of this money to further reduce the first mortgage so she could have the Kiowa county land clear. As she says, he told her the day she gave him the $2,500 and paid the $1,500 to reduce the first mortgage to $615: "We all know Mr. Converse will never get well; we are certain of that. I will release all holds I got in the Kiowa land if you will give me the $2,500; you take your money and clear up that loan up there and have your home clear." Are none of these promises actionable fraud? None of the cases cited by the appellant to show that they are not actionable are based on a state of facts like these, and for the purpose of determining the error of the court in ruling on the demurrer they are to be regarded as facts.

The third point under this heading is that the evidence of the plaintiffs does not show that they acted as reasonably prudent persons would under the circumstances. In this connection it is contended that the knowledge of their attorney in the foreclosure case was their knowledge. It is nowhere shown that he had any knowledge of what land the mortgages were intended to cover. The plaintiffs up to this time had no actual knowledge of the fraud. An attorney must be shown to have an actual knowledge of facts and fraud before such knowledge can be imputed to the clients. Did the plaintiffs under all these circumstances act as reasonably prudent persons would? They acted just like nearly all persons do who are subjected to the alleged sharp practices and intrigues of those seeking to profit by others' confidence in them and their promises. We enact such measures as the blue-sky laws, found

necessary to protect an alarmingly large proportion of our people. It doesn't come with very good grace from the one whom the evidence tends to show had changed sacred instruments before placing them of record and followed that up with profound secrecy of such change and an incessant chain of promises which were evidently intended to take plaintiffs off their guard and lull them into thoughts of security, that reasonably prudent people should not have believed or trusted him.

"The trend of the decisions of the courts of this and other states is towards the just doctrine, that where a contract is induced by false representations as to material existent facts, which are made with the intent to deceive, and upon which the plaintiff relied, it is no defense to an action for rescission or for damages arising out of the deceit, that the party to whom the representations were made might, with due diligence, have discovered their falsity, and that he made no searching inquiry into facts. 'It matters not,' it has well been declared, 'that a person misled may be said in some loose sense to have been negligent. . . . For it is not just that a man who has deceived another should be permitted to say to him, "You ought not to have believed or trusted me," or "You were yourself guilty of negligence." ' " (*Speed v. Hollingsworth,* 54 Kan. 436, 440, 38 Pac. 496.)

Under two other assignments of error appellant contends that the court erred in not sustaining the demurrer to the evidence on account of the action being barred by the statute of limitations and because the action is *res judicata.* Appellant relies upon the decision in the case of *Black v. Black,* 64 Kan. 689, 68 Pac. 662, and several subsequent cases to start the running of the statute of limitations from the dates of the recording of the two mortgages by reason of constructive notice, but does not in that connection consider the universal exception to that well-established rule, namely, conduct by way of concealment and otherwise which tends to divert the attention of the plaintiffs and throw them off their guard. The very positive rule announced in the Black case is stated in connection with the following expression on page 703:

"No concealment by the mother of the exact nature of the accounts rendered is shown or, from their very nature, can be shown."

In the case of *Hinderliter v. Bell,* 114 Kan. 857, 221 Pac. 252, cited by appellant, the following language is found in the syllabus:

"And that there was no fraud or attempt to prevent her from availing herself of the notice which the instruments and the record imparted."

Also, the following in the opinion:

"Concealment of the transfer after it was made is not charged, nor was there any attempt to throw her off her guard or divert her attention from the contents of the papers she signed nor is it averred that there was any fraud by the defendants to prevent her from ascertaining or availing herself of the contents of the papers or the record of the transfer." (p. 862.)

All through these opinions applying and approving constructive notice the modification is observed to the effect that if the evidence shows that the conduct of the defendant was such as to throw plaintiffs off their guard, or to lull them into a sense of security so as to lead them to omit or forego the examination of the records, then the statute begins to run from the date of the actual knowledge of the fraud. Appellant considers this subject fully in connection with the giving of the instructions and recognizes the exception to the constructive-notice general rule, but insists that the facts here do not justify the modification of the rule as to either mortgage in this case. Of course, if there was no fraud by way of alteration there could be no further fraud by way of concealment. There would be nothing to conceal. That is the consistent theory of the defendant, but we are now considering the demurrer to the evidence, which tends to show alteration, at least enough to go to the jury. Now if there was an actual alteration by the defendant the fraud doesn't stop there. There was a daily and continuous fraud by way of concealment of that original wrong. The offer to purchase is but a link in the natural chain of events likely to occur if the first transaction was fraudulent. In *McMullen v. Loan Association,* 64 Kan. 298, 67 Pac. 892, it was stated with approval that concealed fraud was an implied exception to the statute of limitations, equally applicable to suits at law as well as in equity.

"The rule is no broader than its basis, and if for any reason no obligation exists to consult the record, or if the interested person be circumvented from taking advantage of his opportunity, the rule does not obtain." (*Hutto v. Knowlton,* 82 Kan. 445, 448, 108 Pac. 825.)

In the recent case of *Murphy v. Pusch,* 124 Kan. 323, 259 Pac. 684, the deeds were on record nine years before the action was commenced, and the court held the grantor and his heirs were not barred. The evidence shows that plaintiffs acquired actual knowledge of the alleged alterations of the mortgages in April, 1924, and not before, and this action was commenced July 29, 1925. Because of the concealment from the very day of recording the mortgages and the conduct of the defendant, calculated to circumvent the plaintiffs and

throw them off their guard, the statute did not commence to run until the time of actual knowledge or discovery of the fraud, and the action was therefore not barred.

The further ground of error in overruling the demurrer to the evidence is because the matters and issues herein involved have, prior to the commencement of this action, been tried and adjudicated in the foreclosure case in Kiowa county maintained by the brother of the defendant. In this contention reference is made to the petition filed by the plaintiffs in that foreclosure case in April, 1924, under R. S. 60-3011 to open, vacate and set aside the judgment of foreclosure theretofore rendered in that action because of unavoidable casualty and misfortune preventing them from defending. The petition sets out sickness and other reasons so preventing them, and prays for the vacation of the judgment and that they be permitted to answer and make their defense. The court denied this prayer and sustained the judgment. The petition set forth the defense they offered to make to the judgment, reciting the same averments as to fraud as are alleged in the petition in the case at bar. The only adjudication in that case was the denial of the prayer of plaintiffs to vacate the judgment and to be permitted to defend. There could be no hearing or decision on the merits of the proposed defense until the judgment was set aside, and this the court upon the showing declined to do. This point was recently decided by this court in the case of *Toner v. Conqueror Trust Co.*, 126 Kan. 554, 268 Pac. 810, where it is said in the second paragraph of the syllabus:

"An attempt to vacate a judgment by petition under R. S. 60-3011 is not an inconsistent remedy so as to bar a recovery upon the cause of action set up in such petition when stripped of such allegations as were made to have judgment vacated."

See cases therein cited.

Appellant alleges error in giving and refusing instructions, objecting to the one defining the measure of damages, and arguing that the alteration of the mortgages would not invalidate the notes, and that defendant should have a deduction for the amount of the notes with interest, citing *National Bank v. Hoover*, 114 Kan. 394, 218 Pac. 1003, where in a foreclosure case the mortgage was held invalid and the court allowed judgment on the note according to the prayer of the petition. This is a suit for damages and not a foreclosure action; neither is there any request or demand for set-off or counterclaim in any of the pleadings. The court instructed the jury that the measure

of damages was the reasonable value of the Kiowa county land and the 1925 wheat crop. Appellant urges that as the redemption period ended in May, 1925, plaintiffs should not have sown a wheat crop on the land in the fall of 1924. This argument would be forceful if we were not considering a case based entirely upon fraud.

Serious objection is made to instruction as to the running of the statute of limitations and the failure to give those requested by the defendant. The court, after defining and instructing as to constructive notice, illustrated the rule by applying it to the small mortgage herein involved, but did not illustrate it as to the $7,000, as requested. The court set out the correct rule for determining whether or not an action is barred by constructive notice and it was not necessary to apply that rule to the facts in all cases under consideration.

The various errors as to the introduction of evidence have been examined and considered and we find no reversible error in that connection.

The judgment is affirmed.