No. 31,335

GREAT AMERICAN INSURANCE COMPANY, *Appellant,* v. GEORGE W. O'NEAL and OSCAR W. HALL, *Appellees.*

(27 P. 2d 201.)

Opinion filed December 9, 1933.

*George D. Freeze,* of Goodland, for the appellant.

*Elmer E. Euwer,* of Goodland, for appellee Oscar W. Hall.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover on a bond.

Plaintiff's petition alleged that on July 14, 1925, it appointed one James Earl Chostner as its agent at Kanorado, Kan., and at the time of the appointment required the agent to give bond with sufficient sureties in the sum of $500, the conditions of the bond requiring among other things the prompt payment of all moneys received for premiums and the repayment of commissions on all unearned premiums on policies canceled or rebated for any cause; that on the same day Chostner delivered to plaintiff a bond, which plaintiff accepted, signed by Chostner as principal and the defendants George W. O'Neal and Oscar W. Hall as sureties. A statement of account showing Chostner to be indebted in the sum of $311.97 was attached. It was alleged that Chostner left for parts unknown, and that on April 17, 1930, demand was made on the defendant sureties for payment of the amount, which demand was refused. The prayer was for judgment for $311.97 and interest from April 17, 1930, at six per cent, etc. Copy of the bond and a statement of the account were attached to the petition as exhibits.

Defendant Hall answered, admitting execution of the bond and stating he had no information as to liability other than set forth in the petition and, not knowing said facts, denied same. He alleged O'Neal was a cosigner and, if he was held liable and compelled to pay, that he have judgment against O'Neal for one-half thereof.

Shortly thereafter O'Neal filed a verified answer denying execution of the bond.

Some time thereafter Hall filed an amended answer which alleged that Chostner came to him and requested that he sign the bond, at which time it was signed by Chostner but by no one else; that he informed Chostner he would not sign unless some one else signed the bond, and that Chostner left and later returned with the bond purporting to be signed by O'Neal as a surety, and that he then signed the bond, and that shortly after demand was made upon him he learned O'Neal claimed never to have signed or executed the bond. The prayer was that if it be found that O'Neal did not sign that he be relieved of liability, otherwise that he have judgment

over against O'Neal in the event he paid the full amount of any judgment.

At the trial, evidence was offered in support of the pleadings. In its instructions to the jury, the court said:

"4. If you shall find by the preponderance of the evidence that the defendant Hall, when the bond in question was first presented to him, and when he was requested to sign the same, refused to sign said bond as surety unless and until the said Chostner had procured and caused some other person to sign the same as surety, and if you shall find from the preponderance of the evidence that said Chostner did take said bond away, and afterward returned with it to defendant Hall, with the representation that he had procured ·an additional signer, and if said bond then contained the name of George W. O'Neal, and the defendant Hall then signed said bond as surety, with the understanding and belief that the name of said O'Neal was the genuine signature of said O'Neal, but if you shall find, under the instructions herein given, that the name of said O'Neal was not his genuine signature, but was forged and placed· on said bond without the consent of said O'Neal, then your verdict should be for the defendant Hall for his costs of this action."

The jury returned two verdicts, one for defendant O'Neal for costs, the other for defendant Hall for costs.

The plaintiff filed its motion for a new trial and also its motion for judgment notwithstanding the verdict, this latter motion being directed against the defendant Hall, the grounds being that Hall's amended answer does not state a defense and that the evidence did not prove a defense by Hall. Both motions were denied and plaintiff appeals, the specifications of error covering the rulings on the above motion, and error in the giving of the above quoted instruction. Taking up first the matter of the appeal, in so far as defendant Hall is concerned, it may be observed that under the pleadings, under the evidence and in view of the jury's verdict in favor of O'Neal, the facts must be held to be that Chostner procured Hall to sign a bond, the provisions of which are not disputed, on which the signature of. O'Neal had been forged before its execution by Hall and without his knowledge, which bond was delivered to the plaintiff; and, that Chostner thereby qualified as the agent of plaintiff and represented it thereafter, and collected insurance premiums and retained the same to the damage of the plaintiff in the sum sued for.

Under the circumstances in which the bond was executed and Hall's signature procured, was Hall released or was plaintiff entitled to judgment as a matter of law?

In Stearns on Suretyship (3d ed., p. 158) is the following:

"A suretyship contract induced by the fraud of the principal is nevertheless valid as against the promisor in all cases in which the creditor has no knowledge of the fraud, and has not by his own conduct assisted in perpetrating the fraud.

"Many cases have arisen in which a surety has refused to sign unless another will sign as cosurety, and the principal, to induce the making of the contract, forges the name of the cosurety. Two theories have obtained respecting the liability of the surety under these circumstances.

"One, that it is the duty of the creditor not to accept an obligation without such investigation as will disclose whether the signatures are genuine, that the surety signs upon the implied condition that no advancements will be made unless the contract is in fact what it purports to be, the valid obligation of all the parties, and that a creditor has no right to remain in passive ignorance as to the character of the contract he is accepting.

"The other, and by far the most generally accepted theory, and the one supported by the most satisfactory reasoning, is, that whether the signing by the surety is before or after the forgery, the paper comes to the creditor bearing a stamp of trust and confidence by the surety in the principal, and the creditor should not suffer because of a breach of this confidence, but the loss should rather fall upon the one who held out the principal as worthy of trust.

"A misrepresentation made to the promisor by the principal cannot prevail against the creditor who parts with a consideration in good faith, relying upon the surety, and without knowledge of the fraud.

"The creditor is not bound to investigate each transaction and ascertain whether the surety or guarantor has been deceived.

"If false representations are made by a third person without the knowledge or procurement of the creditor, the promisor is not thereby released."

In Arant on Suretyship the rule is stated:

"When the principal's signature upon an instrument is forged or unauthorized, a surety signing is not liable to the promisee. It is otherwise, however, when another surety's signature is forged or unauthorized, provided this fact was not known to the promisee." (p. 160.)

And in the comment thereon appears the following:

"Where the name of a surety has been forged or signed without authority, a few cases have held that the other sureties are not liable. But where a surety signs the instrument at the request of others than the obligee, or elsewhere than in his presence, there is no reason to require him to see that the other signatures upon the instrument are valid. Accordingly, most of the more recent cases hold the surety liable, whether the instrument is a bond or a promissory note and whether the forged signature of the surety precedes or follows that of the surety who actually signs."

In 21 R. C. L. appears the following:

"In a few cases it has been held that where at the time a surety signs a bond there are other names of sureties signed to it which are in fact forged,

he is not liable, unless he knew that the signatures were forged, the theory being that the contract is not the one that he intended to sign, and that the appearance of the forged signature on the bond is sufficient to put the obligee on inquiry. The general rule, however, appears to be that a surety who signs an obligation after the names of others admits the genuineness of those signatures and if the principal's or the cosureties' names are forged without his knowledge and without the complicity of the holder, it is no defense to the surety that he believed such signatures were genuine. The basis of such responsibility depends, however, on the fact that the obligee has acted in good faith, that there was nothing on the paper to indicate the character of the prior signatures, and that in such case neither the obligee nor the obligor stands relatively in the position to say that he was misled or deceived by the other, and that there is no reason for discharging the surety and giving the obligee nothing. . . The weight of authority seems also to require a surety to see to the genuineness of subsequent signatures, and to hold him liable notwithstanding the forgery of such a signature. But where a surety signed a bond on the condition that a certain other person should also be procured as surety, and such person's signature was not obtained, but his name was forged to the instrument, the bond was held void as to the surety signing it conditionally." (pp. 997, 998.)

In the instant case there was no agreement that any certain person should sign the bond before Hall did. In a note to the last sentence reference is made to 21 R. C. L. 966, wherein it is said:

"Two lines of cases, dealing with variant facts and apparently divergent, but in fact thoroughly harmonious when the distinction between them is kept in mind, control the question as to the validity of a surety's undertaking which has been delivered conditionally. The principles enunciated by these two currents of authority are as follows: (1) When the surety's undertaking is complete and regular on its face, and the obligee has no actual notice of conditions imposed by the surety, the latter is bound. (2) An undertaking which is so incomplete on its face as to suggest nonperformance of some condition imposed by a surety carries notice to the obligee, and relieves the surety. It is true that there is a third line of early cases which holds that a condition imposed by a surety on delivery makes the bond an escrow in the hands of the principal obligor or a coöbligor, and that, although the bond be regular and complete on its face, and the obligee be without notice of the condition, the surety, in case of delivery, is relieved because of the secret restriction between the parties signatory to the bond. This remarkable doctrine, so fraught with invitation to perjury, and so destructive of the possibility of realizing on bonds given for public and private security, has, however, been generally repudiated."

In 50 C. J. 62 the matter is treated thus:

"If the obligee accepts the instrument in good faith, without notice of the forgery, it is no defense to a surety that he was induced to sign an instrument on the supposition that a prior signature thereon was genuine; he is bound, although the signature of the principal is a forgery.

"Unless the creditor takes the instrument with notice of the facts, the

forgery of the signature of a cosurety will not affect the liability of a surety, as where the forged signature is placed on the instrument after he has executed it. So, also, if the payee or obligee has accepted the instrument without notice of the forgery, a surety will not be relieved from liability merely because he signs the instrument in the belief that the signature of a cosurety already appearing thereon is genuine, when, as a matter of fact, it is a forgery, as in such a case he will be regarded as affirming the genuineness of the previous signature, and this rule has been held to apply, although the forged name is erased before delivery of the instrument. Under some statutes, however, the liability of the remaining sureties will be proportionately diminished."

And, in 71 A. L. R. 1278 appears a note with many citations on "misrepresentations by principal obligor to surety or guarantor as affecting obligee," in which it is stated:

"As a general rule, in the United States, when a principal obligor has induced his surety or guarantor to sign an instrument by false or fraudulent representations, such representations may not be set up by the surety or guarantor as a defense to an action on the indorsement or guaranty unless the obligee or guarantee had notice of or participated in such fraud."

The precise question presented in this appeal does not seem to have been considered by this court. In *Doorley v. Lumber Co.*, 4 Kan. App. 93, 46 Pac. 195, it was held that:

"Where a surety signs a bond and leaves it in the hands of the principal, to be delivered only upon the performance of certain conditions, and the principal delivers the bond to the obligee without such condition being complied with, and the obligee takes it without notice of the conditional agreement, the surety will be bound." (Syl. ¶ 1.)

In *Star Ins. Co. v. Carey*, 126 Kan. 205, 267 Pac. 990, the syllabus recites:

"In an action by the obligee against the surety on a fidelity bond of a local recording insurance agent, where the obligee had no part in the matter of inducing the surety to sign the bond, the fact that the agent was behind time with his remittances of moneys belonging to his principal, the obligee of the bond, at the time the bond was required, and that the obligee did not volunteer to inform the surety of that fact, did not constitute a fraud upon the surety nor was such nondisclosure sufficient to release the surety from his obligation.

"A local agent of an insurance company was dilatory, negligent and behind time in the matter of making remittances to his company of its share of the premiums collected by him. The company required him to give bond for the faithful performance of his duties in the future. The agent induced the defendant to sign the bond as surety and mailed the bond to the company. Two months later the agent died, being indebted to his company at the time. In an action against the surety a defense based on the fact that the company had not apprised him that the agent was delinquent in his remittances at the time he was induced to sign the bond, and that he had no knowledge of the

fact, *held* such defense was insufficient to vitiate the bond or to defeat a recovery thereon." (Syl. ¶¶ 2, 3.)

See, also, *Carter v. Moulton,* 51 Kan. 9, 32 Pac. 633, and *Risse v. Planing Mill Co.,* 55 Kan. 518, 40 Pac. 904, as bearing on the same question.

The above decisions present facts showing greater reasons for relieving the surety than exist in the instant case. Here the evidence showed that Chostner was an applicant for an appointment as agent of plaintiff; that a bond was required; that Chostner first approached Hall to sign as surety; that Hall stated he would sign only if another surety were obtained; that later the bond bearing O'Neal's signature was presented to Hall and he then signed. There is no evidence that the plaintiff knew that O'Neal denied signing until he answered in this case. Hall argues that Chostner was designated as agent in the bond, and that therefore he was the agent of the company to procure the bond and the company therefore had notice. The argument is deduced from the bond itself. The evidence was that the blank form of the bond was given Chostner and that he was not appointed until it was returned fully executed. We are impelled to hold that where an applicant for an insurance agency, who is required to give bond as a condition precedent to appointment, procures the signature of two sureties to the bond form submitted, the second of whom was induced to sign by reason of the forged signature of the first, and such bond is delivered to the insurance company which has no knowledge of the fraud, the forgery of the name of the purported surety does not release the surety who admits the execution of the bond, and in an action on the bond where the pleadings and evidence disclose such a state of facts, the insurance company is entitled to judgment as a matter of law against the surety who admits execution of the bond. It follows that the instruction complained of was erroneous.

In so far as the appeal against the defendant O'Neal is concerned, appellant contends that the evidence tending to show O'Neal signed the bond is documentary; that this court is in as good position as the lower court and jury to weigh it and it should be reëxamined; and that such examination will disclose that the jury's finding in favor of O'Neal is not supported by the evidence. The answer to such a contention is that appellant offered oral testimony to prove O'Neal's handwriting and O'Neal testified personally, and this testimony, with the documentary evidence, was before the court and

jury. We have examined the evidence solely to determine whether there was evidence to support the verdict, and it is to be found in O'Neal's denial. Were we the jury, we might have come to a different conclusion, but that does not warrant a reversal as to O'Neal. (See *Converse v. Watts,* 127 Kan. 673, 275 Pac. 181.)

It is clear that as to the defendant O'Neal, the judgment must be affirmed, and that as to the defendant Hall it must be reversed. There is no dispute as to the amount due to the plaintiff from the agent Chostner and for which Hall is liable on the bond, and no good purpose would be served by sending the case back for retrial of an issue which is not in dispute.

The cause is remanded with instructions to the trial court to render judgment in favor of plaintiff against defendant Hall for $311.97 with interest thereon from April 17, 1930, at the rate of six per cent.

HUTCHISON, J., not sitting.