JAMES F. HARDY *et ux.* v. B. E. LADOW *et al.*

No. 14,198.   (83 Pac. 401.)

SYLLABUS BY THE COURT.

1. PRACTICE, DISTRICT COURT—*Prayer for Relief—Judgment.* The demand of the plaintiff in his petition does not necessarily limit the court in the judgment which it may render. It is the case made by the pleadings and the facts proved, and not the prayer of the pleader, which measure the relief that the court may award.

2. CONTRACTS—*Lease—Mistake—Reformation.* A plaintiff alleged that the terms of a lease were agreed upon, but that advantage was taken of his infirmities and he was procured to sign a lease that did not conform to the agreement of the parties. He prayed for a cancelation of the lease, and there was also a prayer for general relief. Upon the testimony the court found that no fraud was intended, and that the nonconformity of the lease with the agreement was the result of an innocent mistake. *Held,* that it was within the power of the court to reform the lease and make it conform to the understanding and agreement of the parties.

Error from Wilson district court; Leander Still-well, judge.　Opinion filed November 11, 1905.　Affirmed.

*Mikesell & Wilson,* and *P. C. Young,* for plaintiffs in error.

*S. S. Kirkpatrick,* for defendants in error.

The opinion of the court was delivered by

Johnston, C. J.: The controversy in this case is whether a written lease conforms to the agreement of the parties.　After considerable negotiation James F. Hardy and his wife signed an oil-and-gas lease to the Kansas Pipe-line and Refining Company.　It was written by an agent of the company, examined by an agent of the Hardys, and read aloud in their presence before it was signed; but it is claimed that it was not correctly read, and that provisions which it was supposed to contain were fraudulently omitted.　It was alleged that Mrs. Hardy was blind, and that Mr. Hardy's vision was greatly impaired; that the lease was executed in the night-time; that because of their infirmities the Hardys had to depend upon others to ascertain the contents of the prepared lease; and that the agent of the company conspired with their agent to procure the signing of a lease which differed materially from the agreement arrived at and from that which the lease was supposed to incorporate.　They therefore brought this suit against B. E. LaDow, to whom the lease had been assigned, and who had purchased it for the Fredonia Gas Company, which was also made a party defendant; and in their petition they asked for a cancelation of the lease, "and for such other and further relief as to the court might seem just and proper."

The answer of the defendants denied that the lease was incorrectly written or wrongfully obtained; alleged that it had been read aloud before it was signed, and that a copy which was compared with the original was left with the Hardys and had been in their possession

ever since its execution; that the defendants had purchased the lease and expended large sums of money in laying pipes and mains across the lands of plaintiffs for the purpose of conveying the gas from the wells to be drilled on and near the premises of the plaintiffs; that this was done with full knowledge on the part of the Hardys of the assignment of the lease; and that they made no objection thereto and gave no intimation that the lease was wrongfully obtained until about the time the suit was brought. It was alleged that the assignment of the lease was taken and $600 paid therefor by the defendants upon the belief that it was a valid instrument, and without knowledge that there had been any wrongs or defects in its execution, and they averred that it would be inequitable and unjust to permit the plaintiff now to assert that the lease was void and of no value.

The circumstances of the transaction were fully presented to the court at the trial, and its opinion as expressed in the record was that "no wilful fraud or wrong had been perpetrated on the plaintiffs in the matter of the execution of the lease in controversy, but that any deviation in the terms of the written lease from the actual contract between the parties thereto occurred simply by reason of an innocent mistake or misapprehension." The court further found that when the defendants acquired the lease they had no notice of any defects in its execution, or of any equities in favor of the plaintiffs; that, while plaintiffs were entitled to relief, it would be unjust to decree a cancelation of the instrument; that in equity and in justice to all the parties the lease should be reformed so as to conform to the agreement and understanding of the parties at the time of its execution. Judgment was accordingly given.

The first and principal complaint is that the court exceeded its authority in reforming the lease, when the only relief sought was its cancelation. It is insisted that the prayer of the petition measured the power of

the court in rendering judgment. While the code requires that the plaintiff shall demand the relief to which he supposes himself to be entitled, the relief which the court may grant him depends upon the facts alleged in the petition rather than upon the arbitrary demand which he may make in the prayer. In the third edition of Bliss on Code Pleading, section 161, it is said:

"If the facts put in issue and established by evidence entitle the party to any relief in the power of the court to give, although not that demanded, it is the duty of the court to give it, and its power to do so is not conditioned upon the form of the prayer."

(See, also, *Walker v. Fleming,* 37 Kan. 171, 14 Pac. 470; *Henry v. McKittrick,* 42 Kan. 485, 22 Pac. 576; *Bank v. Wattles,* 8 Kan. App. 136, 54 Pac. 1103.)

The prayer of a pleading is sometimes used to explain the averments that precede it, and a party who is given no more than he demands may not be in a position to complain; but, so far as the court is concerned, it is the case made by the pleadings and the facts proved, and not the prayer of the party, which determines the measure of relief which the court may award. In *Smith v. Kimball,* 36 Kan. 474, 492, 13 Pac. 812, it was said:

"However strongly a pleader may be bound, and however much he may be estopped by the averments of facts in the body of his pleadings, it is doubtful whether he is bound or estopped by his prayer for relief. He is supposed to know the facts upon which he predicates his action, and to state them as he understands them, but the relief to which he is entitled on the facts related is a question for the court, and over which he has no control."

Here, in addition to the demand for the cancelation of the lease, was a prayer for general relief. Under the equity practice a mistake in the demand for special relief does not preclude the court from granting the proper relief under the general prayer. (*Tayloe v.*

*Merchants' Fire Ins. Co.,* 50 U. S. 390, 406, 13 L. Ed. 187; *Stevens v. Gladding et al.,* 58 U. S. 447, 454, 15 L. Ed. 155; *Patrick v. Izenhart,* 20 Fed. [C. C.] 339; 5 Encyc. Pl. & Pr. 956.)    Under the code the power of the court to grant relief under a general prayer is no more restricted than under the equity practice; and, indeed, the theory in some courts is that the general prayer, although not expressed, is always implied in actions of this character.    (*Knight v. Houghtalling,* 85 N. C. 17.)

In this case the plaintiffs set up the contract of the parties, and asked for the cancelation of the same on the ground of fraud.    The court in effect found in favor of the plaintiffs as to the character of the contract; that a mistake had been made in the execution of the lease, but that no actual fraud had been committed in its execution.    The decree of the court gave effect to the actual agreement of the parties, and the reformation of the lease for this purpose was consistent with the pleadings and the proof of the case, and certainly within the power of the court to grant.

The contention that the contract found and declared by the court was not the one made by the parties cannot be sustained.    Although the parties did not agree fully as to the interpretation of some of the provisions, there appears to be little dispute in the testimony as to the substantial features of the agreement actually made and intended to be included in the written lease. In the provision that if either oil or gas should be found in paying quantity another well should be drilled within six months thereafter, and one in each succeeding six months until eight wells were drilled, the words "or gas" were left out of the lease, which was a substantial departure from the agreement; but their omission, as the court found, was an innocent mistake.    The use of the words "or gas" in one part of the lease to some extent indicates that their omission in another part was inadvertent.    The testimony appears sufficiently to support the finding of the court as

to the terms of the agreement, and these are fairly included in the lease as reformed by the court.

The judgment of the court appears to have been not only within its powers, but in accord with equity and justice, and therefore it is affirmed.

All the Justices concurring.