No. 35,111

Ellen Hawkins, *Appellee*, v. Fred U. T. Smith et al., *Appellees* (Angeline M. Foraker, *Appellant*).

(111 P. 2d 1108)

Opinion filed April 12, 1941.

*Morris H. Cundiff*, of Wichita, for the appellant.
*Harold A. Zelinkoff*, of Wichita, for the appellee.

The opinion of the court was delivered by

Thiele, J.: One of the defendants in the above-entitled action appeals from an order of the district court denying her application to vacate a judgment rendered against her for the asserted reason the judgment was outside the issues involved in the action and therefore void.

Insofar as it is necessary to note, the pleadings disclosed the following: On August 10, 1936, plaintiff commenced her action by filing her petition in which she alleged that she owned an undivided ½₂ interest in an oil and gas lease on a certain tract in McPherson county, upon which there was a producing well, which interest she obtained by assignment from Curt Hawkins; that on November 6, 1933, Curt Hawkins and the defendants M. A. Lyman, Pauline Lyman, Alice

Ruse and Lou E. Hartley and one Spitz entered into a trust agreement with defendants John L. Gleason and Fred U. T. Smith, a copy of the agreement being attached to the petition; that Smith and Gleason accepted the trust and ever since have received the rents, etc., from the trust property and have disposed of part of the same; have paid plaintiff $125.79 and no more, although more than $65,000 in oil had been produced and sold, and have converted the same to their own use; that plaintiff had requested an accounting, which had been refused; that defendant Clara A. Hamilton was the owner of the real estate which the oil and gas lease covered; that defendant Blair had a mechanic's lien of record against the lease, and that sixteen named defendants, including Angeline M. Foraker and others, as well as plaintiff's co-beneficiaries, claimed some interest in the leasehold, the nature of which was unknown to plaintiff. Her prayer was that an account be taken of the trust property and that the trustees be required to account to plaintiff for her portion thereof; that they be enjoined from converting the property to their use; that they be removed and another trustee be appointed; that in the meantime a receiver be appointed and that plaintiff have such other and further relief as to the court should seem equitable. The trust agreement affected only the undivided seven-sixteenths interest of Curt Hawkins and five other persons, not including defendant Angeline M. Foraker.

On the same day the petition was filed, the trial court made its order appointing a receiver of the—

"Trust property including the oil and gas leasehold herein described to take charge of the same together with oil well and personal property thereon situated . . . and that said receiver shall operate said trust property, produce said oil well, collect revenue from the same, and do all matters connected with said oil and gas lease and trust property as are necessary under the orders of this court and administer said trust property, including said oil and gas lease and bank account, until the further order of this court: . . .

"It is further ordered, that any money due Fred U. T. Smith and John L. Gleason, trustees, *or any oil runs accumulated or that may hereafter accumulate and due or to become due the seven-eighths working interest on said leasehold shall be paid to the said receiver,*" etc. (Italics ours.)

On July 13, 1937, Fred U. T. Smith, individually and as trustee, filed his answer in which he alleged he had leased for oil and gas purposes the lands described in the pleadings, and that Harve Foraker, husband of Angeline M. Foraker, was associated with him in obtaining the lease. He alleged that in order to finance drilling of

the well it was necessary to sell working interests and he and Foraker agreed with Gleason, who should hold the property in trust; that a one-half interest in the lease should belong to Smith, out of which should be financed the drilling of the well and of the remaining half Smith was to have 6/32, Foraker 5/32 and Gleason 5/32; that interests in the oil and gas leasehold estate were conveyed to numerous persons, some of whom conveyed to others, and he set out a list of what was stated to be all of the owners and their respective shares. This list shows that plaintiff and various defendants owned interests and that Angeline M. Foraker owned a 40/256 interest. He further alleged facts pertaining to the development and operation of the lease, the income arising therefrom, and that his co-defendant Gleason had collected all of the oil runs, with certain exceptions noted, and that Gleason was indebted to all of the other interest holders in the sum of $3,587. He further alleged that his co-defendant, Angeline M. Foraker, was the wife of Harve Foraker and had succeeded to his interest in the oil and gas leasehold estate and that she had collected $52.18 more than her pro-rata share. He also alleged the amounts received by various interest holders who had not received their pro-rata shares, the amount of outstanding claims for supplies, taxes, pay roll, etc.; that certain named defendants, not including Angeline M. Foraker, had no interest in the property; that he had no claim individually and his only interest was as a trustee and by reason of the acts of his co-trustee Gleason, he had been unable to fully perform the operating agreement previously alleged. Other of his allegations need not be noted. His prayer was that such judgments and decrees be rendered as would protect the interests of plaintiff and all of the defendants. On February 23, 1937, the defendants, Mrs. M. A. Lyman, Pauline Lyman, Jewell Lyman and Eveline May Ohlerking, filed their answers, making certain admissions and denials, and setting up amounts they had each received and that each was entitled to receive further amounts; that all sums from the sale of oil from the well should have been prorated among the interest holders according to their respective interests, and that no preference should have been shown John L. Gleason, Elsie C. C. Gleason and May Smith. The answer then alleged:

"FIFTH: The defendants herein named for further answer allege and state that without the knowledge of the defendants herein named, the defendant, Angeline M. Foraker, an interest-holder, did collect and pay herself certain sums of money, which amounts are unknown to these defendants, but certain figures in this respect are set out in paragraph eleven of defendant Fred U. T. Smith's answer.

"Sixth: Said defendants, further answering, say that their said codefendants, John L. Gleason, Elsie C. C. Gleason, May Smith and Angeline M. Foraker, and each and all of them, should pay into the clerk of this court all moneys received or paid to them or either of them in excess of the pro-rata shares received by these defendants which moneys should then be prorated by this court among all the interest holders according to their respective interests. That in lieu of the return of said money or upon failure of said codefendants so to do these defendants and their co-defendants like situated should have a first and prior lien upon all goods, moneys, property, chattels and leasehold estate for the payment thereof."

They prayed that an accounting be taken of all the trust property, etc., and—

"If any of the parties to said action have received more than their just pro-rata share of said funds that he or they be required to pay the excess so received into this court for a proper distribution thereof," etc.

Although the record as abstracted does not disclose it, we are told in the briefs that when the petition was filed a summons was issued for the defendant Angeline M. Foraker, but for some unknown reason no return was made by the sheriff. However, after all of the above pleadings had been filed, apparently on praecipe of the plaintiff, under date of May 19, 1938, a summons was issued and later returned showing personal service on Angeline M. Foraker. This summons was endorsed:

"Suit Brought For—If Defendant fail to answer, judgment will be taken as prayed for, and for costs of this action."

Mrs. Foraker filed no pleading or answer and the record shows she was always in default.

The matter came on for hearing on March 20, 1939, at which time the court found various defendants had been properly served with summons, and that by reason of their respective cross petitions certain persons had valid claims against the leasehold property and judgments in rem were adjudged, the receiver was ordered to offer for sale the leasehold and equipment thereon and report the bids to the court and after the sale to pay the proceeds as directed. On October 31, 1939, the matter came on for further hearing, at which time the report of the receiver was approved and the receiver was ordered to make certain payments of expenses, the balance remaining being prorated among those claimants receiving judgments in rem. On March 27, 1940, a further hearing was had. The journal entry shows that although Angeline M. Foraker had been personally served with summons, she was wholly in default of any plead-

ing. The trial court found that Angeline M. Foraker was indebted to plaintiff and to her co-defendants, Mrs. M. A. Lyman, Pauline Lyman, Jewell Lyman and Eveline May Ohlerking, in the sum of $530.46, and that other of the defendants were indebted in other amounts, with which we are not now concerned, and judgment was rendered accordingly; that the receiver had performed all duties enjoined on him by the law and the orders of the court and had made distribution of all moneys in his hands and should be discharged, and it was so ordered.

On July 8, 1940, Angeline M. Foraker filed her motion to vacate the judgment against her. This motion recited rendition of the judgment and alleged it was void as being outside any issue pleaded or tendered in the cause; that the petition of plaintiff was for an accounting and neither alleged nor claimed any rights or judgments against her; that she had never appeared in the cause and had no knowledge of the purported hearing or of the findings or judgment against her in this cause until some time after the same was entered of record; that she was never served with or had any knowledge of any pleadings filed by the judgment creditors and that there was no pleading in the cause that would raise any issue or claim against her as is purported and has been adjudicated against her; that if any such claim had been raised it was without any issue in the cause and the court was without jurisdiction to make the aforesaid purported findings and judgments against her; that the same are void and should be set aside.

On hearing, the above motion was denied and Angeline M. Foraker appeals, specifying as error the ruling on the motion.

Our code of civil procedure provides that a void judgment may be vacated at any time on the motion of any party affected thereby (G. S. 1935, 60-3009). There is therefore involved no question of procedure here. The sole contention is that the judgment was as to a matter outside the issues presented by the pleadings and therefore void. Appellant directs our attention primarily to *Gille v. Emmons,* 58 Kan. 118, 48 Pac. 569, where it was held:

"A judgment entirely outside the issues in the case and upon a matter not submitted to the court for its determination, is a nullity; and may be vacated and set aside at any time upon motion of the defendant." (Syl. ¶ 1.)

and to a number of cases where that rule was followed, viz.: *New v. Smith,* 86 Kan. 1, 119 Pac. 380; *Brinkerhoff v. Bank,* 109 Kan. 700, 205 Pac. 779; *Herring v. Blue Mound Mining Co.,* 124 Kan. 171,

257 Pac. 955; *Skaer v. Capsey,* 127 Kan. 383, 273 Pac. 464. The rule was also referred to and applied in the more recent cases of *Southern Kan. Stage Lines v. Webb,* 141 Kan. 476, 41 P. 2d 1025, and *Patton v. Sartin,* 149 Kan. 299, 87 P. 2d 589. With that rule as a premise, appellant argues that the action set out in the petition is against Smith and Gleason, individually and as trustees, to compel an accounting under a trust agreement attached to the petition as a part thereof, and for the appointment of a receiver of the trust property, and that there is no claim of any kind made against the appellant, personal or otherwise, and that the petition raises no issue as to the appellant. She then takes up the answer of Smith and argues that the allegation she has received more than her pro-rata share from oil runs may be informative but has no binding effect on her. And the allegations of the answer of the defendants who recovered judgment against her are disposed of in similar fashion. We think appellant's method of approach ignores certain allegations of the petition, the nature of the action, and applicable principles of law.

Taking up first the nature of the action, it is apparent that it was of an equitable nature. While it was clear that plaintiff sought to have her trustee account to her, it was also clear from the petition that the specific trust property was part of a greater whole, an oil and gas leasehold estate, and that to determine whether plaintiff had or would receive her full beneficial share it was necessary to determine not only the share her trustee did receive, but the share he should have received from the entire venture. That was inherent in the allegations charging that the defendant Hamilton owned the leased real estate; that defendant Blair had a mechanic's lien and that sixteen other defendants, including Angeline M. Foraker, claimed right, title and interest in and to the leasehold. That such was the view of the trial court appears from its order appointing a receiver, not only for the property included in the trust agreement, but for the full seven-eighths working interest on the leasehold. When defendant Smith filed his answer, it appeared that Mrs. Foraker had received more than her pro-rata share, and when the remaining answering defendants filed their answer, it again appeared there was a demand that she account. It was at this stage that Mrs. Foraker was served with summons. That she was properly made a party cannot be doubted, for it is provided by the code of civil procedure that—

"Any person may be made a defendant who has, or claims, an interest in the

controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein." (G. S. 1935, 60-411.)

When Mrs. Foraker was served with summons, either she then reviewed the record and discovered the leasehold interest was in possession of the trial court's receiver, and that allegations had been made she claimed an interest therein and had received more than her pro-rata share, or she chose to ignore the notice with necessary consequences. In any event, she did nothing.

There is and can be no question but that the district court of McPherson county had jurisdiction of the subject matter; there is no contention Mrs. Foraker was not served with summons, and the remaining question is, What was the extent of the power of the district court to render a judgment under the circumstances? The general rule as to the power of the trial court in an action of an equitable nature is stated in 21 C. J. 661, thus:

"The power is conferred and the duty is imposed upon a court of equity, which has acquired jurisdiction, to consider and determine all the rights and claims of the parties relating to the subject matter, and to enter a decree that will finally determine them, to the end that a multiplicity of suits may be avoided and litigation may cease."

(See, also, 1 C. J. S. 666.)

An application of the rule was made in *Martin v. Martin*, 44 Kan. 295, 297, 24 Pac. 418, where it was said:

"It is a well-settled principle of equity jurisprudence that where the court has all the parties before it, it will adjudicate upon all the rights of the parties connected with the suit, so far as it can, so as to avoid a multiplicity of suits. (*Seibert v. Thompson*, 8 Kan. 65.) Courts of equity may adjust their decrees so as to meet most, if not all, the exigencies which may arise; and they may vary, qualify, restrain and model the remedy so as to suit it to the mutual and adverse claims controlling equities, and the real and substantial rights of the parties. (1 Story's Eq. Jur., § 28.)

"The court below, having acquired jurisdiction of the parties and the subject-matter of the suit, had the inherent power to make all necessary orders, decrees and judgments, so as to settle the matters in controversy, and thus prevent litigation. Where a court of equity obtains jurisdiction of a suit for the purpose of granting some distinctively equitable relief, and the special relief prayed for is not practicable, the court may retain the cause, decide all the issues involved, and may decree the payment of mere compensatory damages. (1 Pom. Eq. Jur., § 237, and authorities there cited.)" (p. 297.)

And in *Madden v. Glathart*, 115 Kan. 796, 800, 224 Pac. 910, is the following statement:

"In the early case of *Kimball et al. v. Connors Starks et al.*, 3 Kan. 414, 430, it was said in substance: The spirit of the code requires that so far as possible all controversies concerning a particular subject matter shall be concluded in one proceeding, and it is made the duty of the court to have all appearing to be interested therein made parties, to the end that their rights may be adjudicated. All parties in interest being present, the power of the court to render such judgment as the facts may require, under the pleading, is plenary. The old systems of practice are by the code abolished; it furnishes facilities in the 'civil action' for all that could be accomplished by the former system. A decree or a judgment or a compound of both may be rendered therein." (p. 800.)

We think the allegations of the answers that appellant had received more than her pro-rata share from operation of the leasehold, and that she should account for the excess cannot be said to be merely informative, and not subject to inquiry by the trial court, as contended by her, nor that *Brinkerhoff v. Bank*, 109 Kan. 700, 205 Pac. 779, and *Baird v. Bureman*, 138 Kan. 381, 26 P. 2d 272, relied upon by her, support such a contention.

Although there is some discussion as to the evidence offered at the trial to determine the amount of the judgment, we shall not comment thereon, for that is beyond the purview of the motion, from the ruling on which the appeal arises. In any event, there is no contention by appellant that if the judgment might properly have been rendered, that it was for a wrong amount.

We are of the opinion that the petition properly charged appellant with having an interest in the subject matter (*Seaton v. Escher*, 86 Kan. 679, 121 Pac. 907), and that the answers demanded of her that she account concerning the leasehold interest involved. Even if such pleadings might have been subject to motion to make definite and certain, they at least made a *prima facie* showing of a right to an accounting. With such pleadings on file, appellant was served with summons and permitted judgment to be taken against her by default. She may not now say the judgment was void as being outside the issues presented. (See G. S. 1935, 60-3109, *Royse v. Grage*, 138 Kan. 779, 28 P. 2d 732.)

The ruling of the trial court denying appellant's motion to have the judgment vacated is affirmed.

ALLEN, J., dissents.