No. 36,731

CALEB HULTZ and LUELLA HULTZ, *Appellants*, v. JOHN TAYLOR et al., *Appellees*.

(181 P. 2d 515)

HUGH MEANS, judge. Opinion filed June 7, 1947.

*George K. Melvin,* of Lawrence, argued the cause, and was on the briefs for the appellants.

*Richard B. Stevens,* of Lawrence, argued the cause, and *John W. Brand,* of Lawrence, was with him on the briefs for the appellees.

The opinion of the court was delivered by

BURCH, J.: This appeal presents a peculiar equity case in which the trial court denied the contesting parties any relief by holding that none of them had sustained the burden of proof. As a result, all of the litigants have been left lingering in legal incertitude. The plaintiffs filed a motion for a new trial and so did the defendants. The district court denied both of such motions and entered judgment against the plaintiffs for costs. The plaintiffs have appealed from the judgment and from the order overruling their motion for a new trial. Better comprehension of the legal problems presented develops from a compendium of the facts. It follows:

The findings of fact and the admissions of the parties disclose that the plaintiffs, who were husband and wife, owned a 30-acre farm, upon which a house and some other improvements had been constructed. The plaintiffs were about to lose the property because a mortgage thereon had been foreclosed and the period of the equity of redemption was about to expire. The plaintiffs alleged that before such expiration they entered into an oral agreement with the defendants relative to the redemption of the land. According to the allegations the agreement was, in substance, that the plaintiffs and the defendants would accumulate the necessary redemption money in the amount of $2,852.11. The court's findings of fact disclose that the parties acquired the redemption money by the plaintiff, Caleb Hultz, contributing $276.36, and the defendant, Hugh Taylor, contributing $125.75, and his father, John Taylor, who is also named as a defendant, contributing $2,450. In order for the defendant, John Taylor, to contribute such sum it was necessary for him to borrow the money from a bank and in order for him to do so it was necessary for him to give the bank a mortgage upon the involved property and also upon some other property which he owned and which is not involved in the action. Obviously, before John Taylor could give the bank a mortgage upon the involved property, the title to which would have remained in the plaintiffs until the redemption period expired, it was necessary for John Taylor to acquire title thereto. In furtherance of such purpose, the plaintiffs executed a warranty deed conveying the property to the defendant, John Taylor, and he immediately mortgaged it and the other property to the bank. With the money thus acquired the involved property was redeemed · from the mortgage foreclosure sale and thereafter the title thereto remained in John Taylor until he executed a quitclaim deed conveying his interest in the property to his son, the defendant, Hugh Taylor. According to the court's findings, John Taylor knew that some understanding existed between his son, Hugh Taylor, and the plaintiff, Caleb Hultz, relative to the property but he did not know anything about the details thereof. The plaintiffs no longer contend that they had any agreement whatever with the defendant, John Taylor, but they alleged, and introduced testimony in support thereof, that Hugh Taylor had agreed with them that if they would pay him one-half of the amount of money which had been accumulated for the purpose of redeeming the land and one-half of the interest accruing on the loan from the bank, together with one-half of

the taxes, insurance and other incidental expenses subsequently accruing, that the defendant, Hugh Taylor, would pay off the loan to the bank and thereafter execute a deed to the plaintiffs conveying to them the south 15 acres of the 30-acre tract. The plaintiffs further alleged that they were to continue to live in the house on the premises and that in furtherance of the agreement the plaintiffs paid to Hugh Taylor certain sums of money. The court found that the plaintiffs continued to live in the house, paid no rent for the same, and that "After the redemption, the plaintiffs paid to Hugh Taylor various sums of money which were receipted by Taylor, the receipt describing the payments as being for principal and interest, and taxes, amounting in all to about $1,145.45." It was stipulated by the parties in the trial that if the plaintiff, Caleb Hultz, would pay to the defendant, Hugh Taylor, an additional sum of $646.80 that the plaintiff would thereby have paid exactly one-half of the redemption cost of the property and also one-half of the taxes, interest and other items of expense. As a consequence, the plaintiffs offered to pay such amount into court provided the court decided to require the defendant, Hugh Taylor, to deed to the plaintiffs the south 15 acres of the property. The plaintiffs sought only a decree to such effect and did not ask for alternative relief in the nature of a judgment for the amount of money they had paid to the defendant, Hugh Taylor.

The answer filed by the defendants, John Taylor, his wife, Arvilla, and their son, Hugh Taylor, admitted that the plaintiffs had given John Taylor a warranty deed; that he and his wife had mortgaged the property to the bank for the aforestated amount; admitted that John Taylor redeemed the property from mortgage foreclosure sale, and alleged that on May 20, 1943, John Taylor and his wife executed to the defendant, Hugh Taylor, a quitclaim deed to all of the 30 acres, together with the improvements thereon, and further alleged that Hugh Taylor was in possession of the entire property. A general denial of all facts not admitted was set forth in the answer and the prayer thereto requested that the title to all the property be quieted against the plaintiffs in the defendant, Hugh Taylor, and that the plaintiffs and all persons claiming through or under them be excluded from having any interest in the property and enjoined from asserting any claim to a lien upon the premises.

The defendant, Hugh Taylor, in his testimony disagreed entirely with the contentions of the plaintiffs as to the terms of the oral

contract or agreement into which the parties had entered. Hugh Taylor's testimony as to the agreement was to the effect that the plaintiff, Caleb Hultz, had agreed to sell the land to Hugh Taylor for $3,000 with the understanding that the redemption cost was to apply upon the consideration, leaving a balance of approximately $200 due the plaintiff, Caleb Hultz, and that Hultz also agreed to help provide the money necessary to pay off the mortgage to the bank with the understanding that Hugh Taylor was to pay back all money paid him by Caleb Hultz, with interest thereon, after the expiration of a five-year period during which the plaintiffs were to be permitted to live in the house without paying any rent therefor. The defendant, Hugh Taylor, further testified that he was to have the farm in its entirety, subject only to the right of the plaintiffs to live in the house and that he had farmed practically all of the land and made improvements thereon without paying any rent since February, 1940. The trial court found only that Hugh Taylor had farmed practically all the land and made some improvements thereon without paying any rent therefor.

The trial court filed conclusions of law in which the court held that the plaintiffs had not sustained the burden upon them to establish their cause of action and that the defendant and cross-petitioner, Hugh Taylor, had not sustained the burden of proof upon him to establish his cause of action. Such court further held that it had jurisdiction to partition the real estate but that it would not adjudge partition unless one or both of the parties, within three days, would request such an order. The court's holding in such respect was further qualified by a provision that in the event of partition, the proceeds from the election or a sale should be distributed among the parties in the proportion which each party had contributed to the costs, redemption, taxes, interest and incidental expenses. The plaintiffs did not want the property partitioned and neither did the defendant, Hugh Taylor, and as a consequence no one filed a request for partition. Therefore, the trial court did not adjudge partition. All parties filed motions for a new trial, which were overruled by the court and judgment was entered against the plaintiffs for costs. Plaintiffs also filed a second motion for a new trial following the entry of the judgment for costs but it was likewise overruled.

From the foregoing facts it will be seen that the legal rights of the parties to the action have been adjudged to remain in compli-

cated, chaotic confusion. The plaintiffs do not know whether they have the right to remain in possession of the house; the defendant, Hugh Taylor, does not know whether he has title to all the land as against the claims of the plaintiffs; no one knows who should pay taxes on all or any part of the property. The plaintiffs do not know whether Hugh Taylor owes them money; whether it is a lien upon the land or whether they can hereafter obtain a judgment for the correct amount. Thus, the means to the legal end ended meaningless. Moreover, serious legal complications may arise if the respective parties attempt to seek an adjudication of their respective rights in subsequent, independent litigation. The law relative to avoiding a multiplicity of actions and res judicata may plague the parties in any actions which they may see fit to bring in furtherance of the establishment of their legal rights. We do not pass upon such questions because they are not before us for decision in this appeal.

This court is well aware that the trial court was confronted with perplexing problems concerning the application of the statute of frauds, the effect of part performance, possession, and partial payment thereunder, the sufficiency of written memoranda, the limitations of the pleadings, the possible insufficiency of the testimony, and other complications. Nevertheless, we are convinced that the result reached by the trial court was wrong. The applicable and controlling rule is that equity will not enter a partial or incomplete decree. From 19 Am. Jur. 126, § 127, the following is quoted:

"The rule is that equity will not enter a partial or incomplete decree. Having taken cognizance of a cause for any purpose, a court of equity will ordinarily retain jurisdiction for all purposes; decide all issues which are involved by the subject matter of the dispute between the litigants; award relief which is complete and finally disposes of the litigation so as to make performance of the court's decree perfectly safe to those who may be compelled to obey it; accomplish full justice between the parties litigant; and prevent future litigation."

Later in the text will be found the following from section 409, page 281:

"It is a fundamental principle of chancery courts finally to dispose of litigation, making as complete a decision on all the points embraced in a cause as the nature of the case will admit, so as to preclude not only all further litigation between the same parties, but also the possibility that the parties may at any future period be disturbed or harassed by the claim of any other person, as well as the possibility of any danger of injustice being done to other persons

who are not before the court in the present proceedings. Acting pursuant to this principle, courts of equity require not only that the pleadings shall so present all the matters in controversy that they may be properly adjudicated, but also that, so far as practicable, all persons having any interest in the subject matter of the controversy be made parties, to the end that their rights may be ascertained, . . ."

The text continues:

"A final decree which undertakes to dispose of the whole cause should include a disposition of issues which are raised by a cross bill and answer as well as those which are presented by the pleadings in chief.

"Where several parties, being all those interested in a legal controversy, are before the court asking that their respective rights be determined, and such rights are capable of ascertainment, a decree, based upon indefinite findings, which does not determine the essential rights of all the parties and leaves a material part of the controversy undetermined, is insufficient and will not be upheld on appeal." (§ 409, p. 282.)

Equity maxims support the rule. One of them is that "Equity delights to do justice and not by halves." Another is that "Equity will not suffer a wrong to be without a remedy." (See 30 C. J. S., §§ 104, 105, p. 506.) The rule which we think controlling in this case is stated and will be found supported by nearly four pages of citations in 30 C. J. S., § 67, beginning at page 414. For the purpose of recognition of the rule as distinguished from suggesting what disposition should be made of the controversy, the following quotations are applicable. In *Stephens v. Farwell*, 155 Kan. 491, 126 P. 2d 489, this court held:

"It is apparent that plaintiff sought the aid of a court of equity to have determined his right in the premises. The suit is somewhat out of the ordinary, but it is of that class where the court has power to apply settled rules to unusual conditions and to do equity. (*Marquez v. Cave*, 134 Kan. 374, 5 P. 2d 1081; *Stady v. The Texas Company*, 150 Kan. 420, syl. ¶ 5, 94 P. 2d 322.)" (p. 494.)

Paragraph 5 of the syllabus in the above-cited case of *Stady v. The Texas Company* reads as follows:

"The distinguishing feature of equity jurisdiction is that it possesses full power to apply settled rules to unusual conditions and to mold its decree so as to do equity between the parties."

Paragraph 2 of the syllabus in the case of *Marland Refining Co. v. Cheatum*, 125 Kan. 457, 264 Pac. 738, reads as follows:

"In an action for specific performance a court of equity has power and authority to so frame its judgment and decree as to grant full relief to the parties respecting the subject matter of the litigation."

Such equity principles are so well recognized that further citations in support thereof are unnecessary and would result in only burdensome repetition. Since we have reached the conclusion that the trial court should have disposed of all existing controversies, this opinion probably should close. However, some explanation follows in deference to the trial court and counsel for the respective parties.

This court is cognizant of the fact that this opinion does not cast any light upon the legal problems which must again confront the trial court. This court also is leaving the litigants in the same state of uncertainty as they were prior to the appeal, but such is our deliberate design. Upon appeal, we do not possess the power to pass upon conflicting parol testimony. The trial court has the duty to resolve conflicts in testimony and render proper judgments thereon. If this opinion contained a single sentence indicative of what disposition should be made of the case, it possibly would be prejudicial in its consequences. We cannot with propriety anticipate what rights may be asserted subsequently by counsel for the respective parties or what objections may be made thereto. In furtherance of our purpose to avoid possible prejudice to any of the parties, we have refrained from citing any cases which might by inference suggest what determination should be made of the litigation. One point alone perhaps can be safely commented upon. In a case of this character the relief prayed for by the respective parties is of little or secondary consequence. Under the rule relative to the power and duty of a court in a suit in equity the relief sought sometimes is of significant importance on the question of the court's jurisdiction. But in cases wherein the court has equity jurisdiction the relief prayed for by the parties is not a controlling factor. The prayer to a petition or a cross-petition is not a part of the statement of the cause of action. The purpose which the prayer serves is to indicate the relief to which the pleader may think he is entitled. (See *Eberhardt Lumber Co. v. Lecuyer,* 153 Kan. 386, 389, 110 P. 2d 757.) Paragraph 2 of the syllabus in the last-cited case reads as follows:

"A trial court, sitting as a court of equity, is not obliged to render the specific decree prayed for, but may render a decree in accordance with its own good judgment or discretion as to what justice demands, in view of facts pleaded and evidence adduced."

From the case of *Reinhart v. Reinhart,* 148 Kan. 542, 83 P. 2d 628, the following is quoted:

"It was said in the case of *Snehoda v. National Bank,* 115 Kan. 836, 840, 224 Pac. 914, 'that an amendment to a prayer of a petition is seldom an important matter and never an essential one to the correct administration of justice,' referring to the ruling in the case of *Eagan v. Murray,* 102 Kan. 193, 170 Pac. 389, which is as follows: 'The prayer of a petition is merely the pleader's idea of the relief to which he is entitled; it is not a part of the statement of the cause of action; and if the cause of action is sufficiently stated and sufficiently proved, the court will adjudge and decree the proper legal redress, which may or may not conform in whole or in part to the relief prayed for by the pleader.' (Syl. ¶ 2.)" (p. 545.)

By reason of the foregoing comment, however, it should not be assumed by either the trial court or by counsel in the case that this court is intimating indirectly that any of the parties did or did not seek the proper form of relief. We make the comment only for the purpose of illustrating the extensive power of the trial court under the present pleadings of the parties.

The judgment of the district court is reversed with directions to conduct further proceedings in accordance with the views herein expressed.