No. 39,384

MAUDE S. MINGENBACK; JOHN JOSEPH MINGENBACK and RUTH ZIM-
MERMAN, Nee MINGENBACK, *Appellees,* v. EUGENE C. MINGENBACK,
Individually and as Trustee for himself, Mary Mingenback, Paul
M. Mingenback, Lillian J. Mingenback, being the same person as
Sister M. Pauline O. S. U., and Leo A. Mingenback; LILLIAN J.
MINGENBACK, being the same person as Sister M. Pauline O. S. U.;
LEO A. MINGENBACK, *Appellants,* (ANTHONY P. NUGENT, *Appel-
lee*).

(271 P. 2d 782)

Opinion filed June 12, 1954.

J. S. *Brollier*, of Hugoton, argued the cause, and *Paul A. Wolf*, of Hugoton, was with him on the briefs for the appellants.

*Wm. I. Robinson*, of Wichita, argued the cause, and *Mark H. Adams, Charles E. Jones, J. Ashford Manka*, and *Clifford L. Malone*, all of Wichita, were with him on the briefs for the appellees, Maude S. Mingenback; John Joseph Mingenback and Ruth Zimmerman, nee Mingenback.

*A. E. Kramer*, and *Bernard E. Nordling*, both of Hugoton, were on the briefs for the appellee, Anthony P. Nugent.

The opinion of the court was delivered by

WERTZ, J.: This was an action to reform a deed on the ground it had been fraudulently altered after its execution and delivery.

The appellees will be hereafter referred to as plaintiffs, and the appellants as defendants.

The action was tried by the court which made detailed findings of fact and conclusions of law. Most of the facts alleged in plaintiffs' petition were admitted by defendants' answer. The admitted facts, findings by the court, and the evidence, so far as material to this appeal, may be summarized as follows:

Plaintiff Maude S. Mingenback is the widow of C. F. Mingenback who died on April 20, 1929, and the other plaintiffs are the children of the marriage of Maude S. Mingenback and C. F. Mingenback. The defendants, except Mary Mingenback and Anthony P. Nugent, are the children of C. F. Mingenback by a former marriage. Mary Mingenback is the wife of Eugene C. Mingenback.

The property in question was conveyed by C. F. Mingenback and Maude S. Mingenback, his wife, to Eugene C. Mingenback, as trustee, by two separate deeds, in the years of 1924 and 1925. The plaintiffs and all defendants except Anthony P. Nugent were beneficiaries of the trust. Eugene C. Mingenback accepted the trust and administered it as trustee until December 16, 1940, when a settlement between the trustee and the beneficiaries was effectuated through a division of the trust properties and the execution of a mu-

tual release by the parties in which they agreed to sign future instruments upon demand of any of the other parties.

Anthony P. Nugent was attorney for the plaintiffs in this settlement, having been employed by them in June, 1939. Prior to the settlement and on March 1, 1940, the trustee conveyed to the plaintiffs jointly an undivided one-third royalty or mineral interest in the property in question, for a term of fifteen years and as long thereafter as oil and gas was being produced or the property was being developed or operated.

After the settlement and on December 31, 1940, plaintiffs executed a mineral deed purporting to convey to Anthony P. Nugent the fee title to 1/15th interest in the minerals in the Morton County land.

Plaintiffs executed seven deeds at the time of the settlement on December 16, 1940. One of these deeds described approximately 3,400 acres of Morton County land and contained no reservation. This is the deed in controversy. When originally prepared, it contained this reservation following the land descriptions: "Reserving to grantors the one-third (1/3) of the oil, gas and mineral rights now of record in their name, as shown by the instrument recorded March 20, 1940, in Book O. & G. 8, page 539, in the office of the Register of Deeds of Morton County, Kansas." This clause was clipped off the bottom of the page containing the descriptions which was pasted on the recorded deed.

There is no controversy as to whether this reservation was in the original deed when it was prepared. The only controversy is when the reservation was removed from the deed. The deed was recorded on February 6, 1943. A deed in identical form conveying land in Stevens County contained this reservation when it was executed and delivered by plaintiffs on December 16, 1940, and this deed was recorded on February 18, 1943.

The plaintiff Maude S. Mingenback and the defendant Anthony P. Nugent testified that the original recorded deed to the Morton County land contained the mineral reservation at the time it was executed and delivered. The plaintiffs John J. Mingenback and Ruth Marie Zimmerman testified that they did not remember whether the deed contained the reservation at the time they signed it, but they were informed by Mrs. Mingenback and Mr. Nugent that they were retaining a mineral interest in this land and understood that the deed contained a reservation.

Maude S. Mingenback caused a one-third mineral interest to be

listed for taxation in Morton County, to herself, and paid taxes thereon as shown by tax receipt. The defendant Eugene C. Mingenback subsequently wrote to Maude S. Mingenback requesting that she and the other plaintiffs join in the execution of oil and gas leases on the property, which was done.

In June, 1950, Anthony P. Nugent was informed by a representative of Terminal Facilities Company that he (Nugent) did not have record title to any mineral interest in the Morton County land and on the same day he notified Mrs. Mingenback. Maude S. Mingenback was acting as agent for the other plaintiffs at all times material herein. On August 2, 1950, Anthony P. Nugent personally examined the record of this deed in the office of the register of deeds of Morton County and discovered that the record did not show any reservation in the grantors. On August 3, 1950, he told Mrs. Mingenback of the situation with respect to the record of this deed. The original recorded deed was shown to Mr. Nugent on April 12, 1951, by Mr. L. H. Ruppenthal, who was acting as attorney for Mr. Mingenback.

Plaintiffs filed their petition to reform the deed on July 31, 1952. Summonses were issued on the same date for service on the defendant Eugene C. Mingenback individually and as trustee for the other defendants except Mr. Nugent, and the sheriff's return shows service on August 4, 1952. An affidavit for service by publication on the other defendants was filed on July 31, 1952. First publication was printed on August 8, 1952.

The parties stipulated at the trial that there was some production of gas being had from part of the Morton County lands and that no part of the royalty from such production had been paid to any party, and that all of such royalty was being impounded in the hands of the purchasers or lessees pending termination of this action.

At the conclusion of plaintiffs' evidence, the defendants other than Anthony P. Nugent demurred to the evidence of the plaintiffs for the reason that the same did not prove the cause of action purported to be alleged in their petition, and for the further reason that such purported cause of action was conclusively shown to be barred by the statute of limitations by the evidence of the plaintiffs themselves. This demurrer was overruled.

Defendants other than Mr. Nugent readily conceded and admitted that the deed in question contained a reservation following the land

descriptions on the typed sheet of paper pasted to the deed at the time the deed was prepared. There is no argument about this fact. The question is—*when* was the reservation removed. L. H. Ruppenthal testified that he had been a practicing lawyer at Mc-Pherson since 1925 and had represented Mr. Mingenback for about twenty years and that he had numerous conferences with Mr. Nugent pertaining to settlement of the trust estate and that the reservation on the deed in question was removed in his office on the evening of December 16, 1940, before the deed was signed by the plaintiffs, and that Mr. Nugent stated he would remove the reservation from the copy, which he did not have with him at that time. This testimony was disputed by plaintiff Maude S. Mingenback and defendant Nugent, as hereinbefore stated.

The defendant Eugene C. Mingenback testified that Mr. Ruppenthal represented him in connection with settlement of the trust estate; that he left everything to Mr. Ruppenthal to agree and work out with Mr. Nugent, subject to the approval of his brothers and sisters; that he was not present in the same room with the plaintiffs at the time of the settlement in the evening of December 16, 1940; that all of the actual consummation of the settlement was handled between Mr. Nugent and Mr. Ruppenthal, as far as he was concerned; that the deed in question did not contain the reservation when it was delivered to him as a part of the settlement; that he never changed the deed in any way after it was delivered to him; that the deed in question was in the same condition as when he received it except for the usual wear and tear on an instrument of that age; that there was no alteration by him or any of his employees or anybody that he knows of; that when he sent the oil and gas leases to Mrs. Mingenback for execution by her and her children, he relied on the agreement she had signed that she would sign any instrument he submitted to her; that Mrs. Mingenback had never talked to him at any time about any matter pertaining to the trust estate since December, 1940.

The court took the matter under advisement and subsequently made findings of fact and conclusions of law which were filed on September 8, 1953. The court's conclusions of law are as follows:

"I. The Statute of Limitations started in this case, in favor of the defendants, on August 2, 1950, the date which Anthony P. Nugent, individually and as attorney representing the plaintiffs, examined the records in the office of the Register of Deeds of Morton County, Kansas, and discovered that the reservation clause was not included in the deed in controversy. The filing of the suit,

the issuing of summons and filing of the affidavit for service by publication on July 31, 1952, suspended the running of the Statute of Limitations in favor of the defendants.

"II. The acts of Eugene C. Mingenback subsequent to December 16, 1940, when the deed in question was delivered to him, as well as his acts subsequent to the recording of said deed on February 6, 1943, clearly indicate that he did not interpret said deed to extinguish the mineral interest of the plaintiffs, and openly recognized such interest.

"III. The acts of Eugene C. Mingenback tolled the running of the Statute of Limitations in favor of the defendents until August 2, 1950, and said acts constitutes fraud against the plaintiffs that entitles them to a reformation of the deed recorded in Book 22 of Deeds, page 575, in the office of the Register of Deeds of Morton County, Kansas, and that said deed be reformed to include immediately below the land description therein the following words:

" 'Reserving to grantors the one-third (1/3) of the oil, gas and mineral rights now of record in their name, as shown by the instrument recorded March 20, 1940, in Book O. & G. 8, page 539, in the office of the Register of Deeds of Morton County, Kansas.'

"The defendants (amended on court's own motion) herein are hereby ordered to account and pay to plaintiffs all proceeds from said mineral interest.

. . . . . . . . . . . . . . . . .

"Dated September 2, 1953."

Judgment was entered for plaintiffs and defendant Nugent, in accordance therewith. Defendants, except Nugent, filed a motion for judgment, motion to amend and supplement findings of fact and conclusions of law, and a motion for new trial on September 10, 1953. These were argued on November 2, 1953. The motion to amend and supplement findings of fact and conclusions of law was sustained in part and overruled in part, and the motion for judgment and the motion for new trial were overruled. From this judgment defendants, except Nugent, appeal.

Defendants first complain the trial court erred in admitting over their objection incompetent evidence offered by plaintiffs. It would serve no useful purpose to detail the evidence complained of. It is noted the abstract fails to disclose that any motion to strike such testimony was made and overruled. In such a situation, under our decisions, since the trial was by the court, even if it be assumed the objections were otherwise good, there is no presumption such testimony, if improperly admitted, was considered or entered into the final decision of the case. Rule No. 53 of this court (G. S. 1949, 60-3827), providing, "In trials before the court, without a jury, where evidence is admitted over proper objections, and not stricken out on timely motion therefor, it shall be presumed that such evidence was

considered by the court and entered into its final decision in the case," has no application in the absence of a timely motion to strike testimony admitted over objection, and under such circumstances there is no presumption the evidence complained of was considered or entered into the final decision of the trial court. (*Spencer v. Supernois*, 176 Kan. 135, 140, 268 P. 2d 946; *In re Estate of Johnson*, 176 Kan. 339, 270 P. 2d 293; *In re Estate of Walker*, 160 Kan. 461, 163 P. 2d 359; *Harrington v. Propulsion Engine Corp.*, 172 Kan. 574, 582, 241 P. 2d 733; *Bradbury v. Wise*, 167 Kan. 737, 748, 208 P. 2d 209.) Moreover, it must be kept in mind admission of incompetent evidence, irrespective of whether it was considered, does not constitute reversible error if there was other competent evidence to sustain the judgment. (*In re Estate of Wittman*, 161 Kan. 398, 402, 168 P. 2d 541; *In re Estate of Johnson*, supra.) An examination of the entire record reveals that the evidence admitted was cumulative in character and did not affect the judgment of the trial court as rendered.

Defendants next contend that plaintiffs had such knowledge of the fraud in June, 1950, as to start the statute of limitations running as of that date, and since the action was commenced on July 31, 1952, it was barred by the two-year statute of limitations. G. S. 1949, 60-306, *Third*, in pertinent part, reads:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: . . .

"*Third*. Within two years: . . . an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

Defendants argued that in June, 1950, plaintiffs through their attorney, Nugent (defendant), were informed by a representative of Terminal Facilities Company that Mr. Nugent did not have record title to any mineral interest in the Morton County land. On the same day Mr. Nugent notified Maude Mingenback, and wrote to the register of deeds of Morton County for a certified copy of the deed which came to Nugent's office in July, 1950, during his absence.

The question is whether the mentioned information given Nugent was a discovery of the fraud within the meaning of the mentioned statute. The trial court held that the statute started to run on August 2, 1950, the date Nugent individually and as attorney for plaintiffs examined the records in the office of the register of deeds of

Morton County, and discovered the reservation clause was not included in the deed in controversy.

Long ago this court defined the term "discovery of the fraud" in *Marbourg v. McCormick*, 23 Kan. 38, 43, wherein Mr. Justice Brewer speaking for the court said:

" 'Discovery of the fraud' is the language of the statute. That implies knowledge, and is not satisfied by mere suspicion of wrong. The suspicion may be such as to call for further investigation, but is not of itself a discovery. A party, even though his suspicions have been aroused, may well be lulled into confidence, and take no action by such representations as were made. And it would be strange if a party who had disarmed suspicions by his representations could thereafter plead those suspicions as ground for immediate inquiry and action. This is not a case where a party is chargeable with notice of exi.ting equities or the rights of third parties, but involves simply the question of liability between the immediate parties."

This rule has been reiterated and applied in *Dalton v. Hill,* 169 Kan. 388, 396, 219 P. 2d 710; *Gates v. Kansas Farmers' Union Royalty Co.,* 153 Kan. 459, 465, 111 P. 2d 1098; *Converse v. Watts,* 127 Kan. 673, 275 Pac. 181.

This court has also followed the rule that if the evidence shows the conduct of the defendant was such as to throw plaintiffs off their guard, or to lull them into a sense of security so as to lead them to omit or forego the examination of the records, then the statute begins to run from the date of the actual knowledge of the fraud. (*Faidley v. Emrich,* 169 Kan. 233, 218 P. 2d 178; *Staab v. Staab,* 160 Kan. 417, 423, 163 P. 2d 418; *Converse v. Watts,* supra.) The record indicates that the plaintiffs' interests were recognized by the defendants for a long period of time, and by gas producing companies as late as March, 1951. At no time, from the date of the execution and delivery of the deed on December 16, 1940, by the plaintiffs, was any question raised by any of the defendants as to the validity of their title and the title of Mr. Nugent to the one-third royalty interest. On August 2, 1950, Mr. Nugent examined the original records in Morton County and discovered they did not contain the reservation of minerals, and even then neither he nor plaintiff Mrs. Mingenback were alarmed because of the long continued recognition of their interests by the defendant Eugene C. Mingenback, who on numerous occasions categorically and unqualifiedly recognized plaintiffs' one-third royalty interest. The most that could be said to support defendants' contention was that Mr. Nugent was informed in June, 1950, that there was some ques-

tion as to the validity of his title. This evidence, however, was not sufficient to indicate there was a discovery of fraud. There was nothing in the conference between Nugent and the representative of the Terminal Facilities Company which would even remotely suggest to Nugent, or anyone else, that the deed in question had been fraudulently altered. The representative of the mentioned company was not a party to the settlement between the plaintiffs and defendants in the transfer of the deed containing the reservation. This action was between the parties to the original agreement of partitioning the property among them as heirs of an estate. No rights of third parties were involved. The long continued recognition of the interest of plaintiffs by defendants lulled them into a sense of security so that even after the company representative indicated there was some question as to validity of plaintiffs' title, they had no reason to suspect that fraud had been perpetrated. The plaintiffs acted diligently upon receipt of such information. Nugent wrote to the register of deeds of Morton County for a copy of the deed. They mailed a copy which was delivered to his office in July during his absence from the state. Upon his return, August 2, 1950, he examined the records in the office of the register of deeds and for the first time discovered the deed did not contain the reservation. He immediately went to McPherson in an endeavor to see defendant Eugene Mingenback but was unable to contact him. Finally a conference was had in Mr. Nugent's office on April 12, 1951, when defendant Mingenback's attorney presented to Nugent the original deed from which the reservation of minerals had been removed, and for the first time learned that a fraud had been perpetrated. The record disclosed that the acts of the plaintiffs were those of reasonably prudent persons. They acted just like nearly all persons do who are subjected to the alleged sharp practices and intrigues of those seeking to profit by others' confidence in them and their promises.

In *Converse v. Watts,* supra, at page 679, it is stated:

"It doesn't come with very good grace from the one whom the evidence tends to show had changed sacred instruments before placing them of record and followed that up with profound secrecy of such change and an incessant chain of promises which were evidently intended to take plaintiffs off their guard and lull them into thoughts of security, that reasonably prudent people should not have believed or trusted him.

'The trend of the decisions of the courts of this and other states is towards the just doctrine, that where a contract is induced by false representations

as to material existent facts, which are made with the intent to deceive, and upon which the plaintiff relied, it is no defense to an action for rescission or for damages arising out of the deceit, that the party to whom the representations were made might, with due dilligence, have discovered their falsity, and that he made no searching inquiry into facts. "It matters not," it has well been declared, "that a person misled may be said in some loose sense to have been negligent. . . . For it is not just that a man who has deceived another should be permitted to say to him, 'You ought not to have believed or trusted me,' or 'You were yourself guilty of negligence.' " ' (*Speed v. Hollingsworth,* 54 Kan. 436, 440, 38 Pac. 496.)"

Under the record in this case, it is crystal clear that there was no "discovery of fraud" in June, 1950, or at any other time more than two years prior to the institution of this action, which would put the statute of limitations into operation.

Defendants next contend the court erred in its conclusion of law No. I, holding that the filing of the suit, issuing of summons and filing the affidavit for service by publication on July 31, 1952, suspended the running of the statute of limitations in favor of the defendants, and argued that the running of the statute was not suspended until the date of the service of summons upon the defendants, or the date of the first publication of notice of suit.

Personal service of summons was had on some of the defendants in McPherson County on August 4. On August 8, the first available publication date after suit was filed, notice was published. The court found that the statute of limitations started in the action in favor of the defendants on August 2, 1950. Defendants, therefore, contend that inasmuch as neither personal nor publication service was had on any of them prior to August 2, the action was barred by the statute.

G. S. 1949, 60-301, provides that a civil action may be commenced in a court of record by filing in the office of the clerk of the proper court a petition and causing a summons to be issued thereon.

For the purpose of the running of the statute of limitations, G. S. 1949, 60-308, provides:

"An action shall be deemed commenced within the meaning of this article, as to each defendant, at the date of the summons which is served on him, or on a codefendant who is a joint contractor, or otherwise united in interest with him. Where service by publication is proper, the action shall be deemed commenced at the date of the first publication. An attempt to commence an action shall be deemed equivalent to the commencement thereof within the meaning of this article when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by the first publication or service of the summons within sixty days."

It has long been the rule of this court that when an action is filed and summons issued, or an affidavit for publication filed within the period of limitation and the plaintiff faithfully, properly and diligently endeavors to procure service, the action is deemed commenced as of the date of the filing of the action, provided service of summons or first publication is actually had within sixty days. This rule was established without exception in *Dunlap v. McFarland, Adm'r.*, 25 Kan. 488, 491, where it was stated:

"The action was commenced when the petition and *praecipe* were filed, and when the summons was issued. Section 20 of the Civil Code has application only to the statute of limitations; but even that section provides that 'an attempt to commence an action shall be deemed equivalent to the commencement thereof, within the meaning of this article, when the party faithfully, properly, and diligently endeavors to procure a service; but such attempt must be followed by the first publication or service of the summons within sixty days.'"

To the same effect, see *Bannister v. Carroll*, 43 Kan. 64, 69, 22 Pac. 1012; *Canaday v. Davis*, 79 Kan. 816, 101 Pac. 626; *Brock v. Francis*, 89 Kan. 463, 131 Pac. 1179.

In *Gigoux v. Griffith*, 109 Kan. 275, 276, 199 Pac. 103, it was stated:

"An action is deemed to be commenced at the date of the summons which was served on the defendant, and an attempt to commence an action is equivalent to a commencement, when the plaintiff faithfully, properly and diligently endeavors to procure a service and the attempt is followed by service within sixty days."

Plaintiffs clearly brought themselves within the mentioned statute by filing their action and causing summons to be issued, and affidavit for service by publication to be filed on July 31, 1952, and faithfully, properly and diligently procuring personal service of summons upon some of the defendants, followed by publication service on others within sixty days. Under such conditions, such service related back to the commencement of the action on July 31, 1952, and the trial court did not err in so holding.

The defendants next contend that the trial court erred in holding that the acts of the defendant Eugene Mingenback, and the letters written by him to plaintiffs in recognition of their oil royalty, constituted fraud upon plaintiffs which entitled them to the reformation of the deed in question. The gist of defendants' contention was that since the trial court made no specific finding as to whether the deed in question was altered before or after its execution and delivery, it was error for the court to hold that other unpleaded acts

were fraudulent which entitled the plaintiffs to recover. We cannot agree with this contention.

The plaintiffs alleged in their petition that the deed in question had in some manner, without their knowledge or authority been altered after execution and delivery, and before it was recorded. Defendants conceded that the real issue of fact in the case was whether the reservation was removed from the deed before or after it was signed by the plaintiffs. If it was removed after execution, obviously it was removed before the deed was recorded, and such removal would be fraudulent. They also conceded that the original deed contained the reservation when it was prepared. There was an abundance of testimony, both direct and circumstantial, that the reservation was contained in the deed at the time it was executed and delivered to the defendants. Defendants' counsel admitted that he clipped the reservation from the deed, but contended he did so with the consent of Nugent. This was denied by Nugent. There was an abundance of testimony that defendants recognized plaintiffs' oil royalty interest on numerous occasions after the execution, delivery and recording of the deed, and that oil companies recognized plaintiffs' interest in the property as late as 1951. The court had jurisdiction of the parties and of the subject matter, heard the evidence and made extensive findings of fact on which it based its conclusion of law No. III, *supra,* wherein it reformed the deed to include the deleted reservation.

It must be remembered that this was an equity action. In such actions, the court may deal with the case in accordance with its own good judgment and discretion as justice demands. We said in *Eberhardt Lumber Co. v. Lecuyer,* 153 Kan. 386, 110 P. 2d 757:

"A trial court, sitting as a court of equity, is not obliged to render the specific decree prayed for, but may render a decree in accordance with its own good judgment or discretion as to what justice demands, in view of facts, pleadings and evidence adduced."

If the facts put in issue and established by evidence entitle the party to any relief in the power of the court to give, although not demanded, it is the duty of the court to give it, and its power to do so is not conditioned upon the form of the prayer. (*Hardy v. LaDow,* 72 Kan. 174, 177, 83 Pac. 401.) Equity will give whatever relief the facts warrant. (*Cowman v. Phillips Petroleum Co.,* 142 Kan. 762, 768, 51 P. 2d 988.) The distinguishing feature of equity jurisdiction is that it possesses full power to apply settled rules to

unusual conditions and to mold its decree so as to do equity between the parties. (*Hultz v. Taylor*, 163 Kan. 180, 185, 181 P. 2d 515.)

In *Hawkins v. Smith*, 153 Kan. 542, 111 P. 2d 1108, we held that it was a well-settled principle of equity jurisprudence that where the court has all the parties before it, it will adjudicate upon all the rights of the parties connected with the suit, so far as it can, so as to avoid a multiplicity of suits. Courts of equity may adjust their decrees so as to meet most, if not all, the exigencies which may arise; and they may vary, qualify, restrain and model the remedy so as to suit it to the mutual and adverse claims controlling equities, and the real and substantial rights of the parties. Courts of equity having acquired jurisdiction of the parties and the subject matter of the suit, have the inherent power to make all necessary orders, decrees and judgments, so as to settle the matters in controversy, and thus prevent further litigation.

In the instant case, all parties in interest being present, the power of the court to render such judgment as the facts required under the pleadings and the evidence was proper. Many of our cases sustaining the foregoing rules may be found in 2 Hatcher's Kansas Digest [Rev. Ed.], Equity, §§ 40, 41.

Moreover, this court is also committed to the rule that a general finding made by the trial court determines every controverted question of fact in support of which evidence had been introduced. (*Sledd v. Munsell*, 149 Kan. 110, 113, 86 P. 2d 567.)

Inherent in the trial court's conclusion No. III, *supra*, reforming the deed to include the reservation clause, and entering judgment in accordance therewith, was the finding that after the deed had been executed and delivered by the plaintiffs, it had been wrongfully and fraudulently altered by the defendants or their agents by deleting therefrom the reservation contained in the deed at the time of its execution and delivery. An examination of the voluminous record in this case reveals that substantial justice has been accomplished.

Other contentions presented by defendants have been considered and found to be without substantial merit. It follows that the judgment of the trial court is affirmed.

It is so ordered.

WEDELL, J. (concurring in part and dissenting in part): I concur in the result but it is my opinion the rule pertaining to "discovery

of fraud" is too narrowly stated in paragraph 2 of the syllabus and the corresponding portion of the opinion. My views on this subject are stated in the dissenting opinion in *Dalton v. Hill,* 169 Kan. 388, 396, 219 P. 2d 710.